BITUMINOUS CASUALTY CORPORATION

V.

T.A. SHEETS

Record No. 890179

March 2, 1990

Present: All the Justices

*James A. Howard, II (Howard & Howard*, on briefs), for appellant.

*Virginia K. Shema (William D. Breit; Breit, Drescher & Breit*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

This is an appeal from a judgment in favor of an insured against an insurer. The insurer relied on two exclusionary clauses in the contract of insurance in refusing to pay the claim. We must decide whether the trial court correctly held those clauses inapplicable.

In 1982, Hunt Contracting Corporation (Hunt), a general contractor, had a contract with the City of Portsmouth for repairs and improvements to the City's sanitary sewer system. Hunt subcontracted a part of the work at the Race Street pumping station to T.A. Sheets, a mechanical contractor. Sheets' responsibility at the Race Street station included temporarily stopping the flow in a sewer main by means of a check valve, breaking the main open in order to install new piping, removing three old pumps, and installing new pumps with an oil-accumulator system to serve them.

Sheets was also required to support and protect the existing piping during the progress of the work.

On March 30, 1983, while the work was in progress, a faulty lead joint in the existing piping yielded to the pressure of the closed main and ruptured, flooding the station with sewage. The lead joint was in a section of pipe 15 to 20 feet away from the area in which Sheets was working. The joint was not a part of Sheets' responsibility under the contract, and he had done no work on it.

A large stream of sewage escaped into the street and officials of the City advised Sheets that emergency repairs must be undertaken immediately. Sheets incurred expenses amounting to approximately $13,000 in cleaning up the station and replacing damaged equipment.

Hunt took the position that the rupture was due to Sheets' negligence in failing to support, or shore up, the existing pipe sufficiently. Sheets made a prompt claim for his losses under a policy of general liability insurance and contractual liability insurance that he had purchased from Bituminous Casualty Corporation (Bituminous). On July 11, 1983, Bituminous sent a letter to Hunt stating that it was denying Hunt's claim against Sheets because its investigation revealed no negligence on the part of Sheets.

In 1984, Sheets brought this action against Hunt and Bituminous, asserting that the loss was due to Hunt's negligence and that if the loss was due to Sheets' negligence, Bituminous was contractually liable under its policy. Hunt counterclaimed, alleging that the loss resulted from Sheets' negligence. Bituminous denied coverage and asked for a separate trial on the coverage issue. When the negligence case came to trial in 1986, Bituminous settled with Hunt on Hunt's counterclaim,* and Sheets dismissed his claim against Hunt. The case was continued solely for determination of Sheets' claim for coverage under his insurance contract with Bituminous. After hearing evidence and arguments, the court ruled that Sheets' claim was covered under the policy and that none of the exclusions applied. On November 15, 1988, the court entered

---

* Because Bituminous defended and settled Hunt's claim without making any reservation of rights, Sheets argues that Bituminous is now estopped to deny coverage under its policy. Bituminous invokes Rule 5:25 as to this argument, correctly pointing out that Sheets made no waiver or estoppel argument in the trial court. We agree, and will not consider those issues.

final judgment against Bituminous for $12,000, the amount claimed by Sheets. We granted Bituminous an appeal.

Although Bituminous contended at trial that Sheets' claim did not come within the insuring clauses of the policy, the only errors assigned relate to the applicability of two exclusionary clauses. Accordingly, we will confine our consideration to those questions. Rule 5:17(c).

Sheets' policy contained an endorsement captioned "Contractual Liability Insurance (Blanket Coverage — Broad Form)," which included eighteen exclusionary clauses, exclusive of subparts. Bituminous relies on exclusions (g) and (k). They provide, respectively, that the insurance does not apply:

(g)   to property damage to

(1)   property owned or occupied by or rented to the insured,

(2)   property used by the insured, or

(3)   property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

and

(k)   to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

The policy contained, following the exclusions, a further endorsement indicating that the following operations were covered:

(22)   Salvage Operations — including incidental wrecking, shoring or other structural work, the handling of machinery in damaged buildings, and salesmen or clerical at site of wrecking

and

(25)   Sewer Mains or Connections Construction — including tunneling at street crossings[.]

Sheets argues that to the extent these specific grants of coverage conflict with the exclusionary clauses, the policy is rendered ambiguous, and even if unambiguous, the exclusionary clauses are inapplicable under the facts of the case.

The case is controlled by familiar principles. Where an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case. *See Johnson* v. *Insurance Co. of No. America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986); *White* v. *State Farm*, 208 Va. 394, 396, 157 S.E.2d 925, 927 (1967). Further, because insurance contracts are ordinarily drafted by insurers rather than by policyholders, the courts consistently construe such contracts, in cases of doubt, in favor of that interpretation which affords coverage, rather than that which withholds it. Policy language purporting to exclude certain events from coverage will be construed most strongly against the insurer. *St. Paul Ins.* v. *Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

Guided by those principles, we apply the two exclusionary clauses under consideration to the facts of the present case. Exclusion (g) applies if the damaged property was (1) owned, occupied or rented by the insured, (2) used by the insured, or (3) under the insured's care, custody or control. Bituminous makes no contention that subsections (1) or (2) apply; its appeal is based upon the theory that the damaged property was in Sheets' "care, custody or control" at the time of the loss.

Sheets' claim consisted of the labor to clean up the pumping station after the flooding and the repair and replacement of the oil accumulator, sump pump, and three motors. At the time of the loss, Sheets had completed his work on the oil accumulator. It had been installed, was operating, and Sheets had received payment for it. The pumps and motors that were damaged had also been installed and therefore were no longer in Sheets' care, custody, or control. The pipe joint which blew out, causing the damage, was old and was not one on which Sheets was required to work. It was no more a part of his responsibility under his contract than were other joints on the same pipeline located miles away. Sheets was the subcontractor responsible for certain mechanical work in the Race Street pumping station, but he was in no sense entrusted with the overall care, custody, or control of the station itself. We

hold that the evidence supports the trial court's finding that the "care, custody and control" exclusion is inapplicable.

■ Exclusion (k) applies only to damage "arising out" of work performed or materials furnished by the insured. Here, the insurer failed to carry its burden of proving by a preponderance of the evidence that any labor, materials, parts, or equipment furnished by Sheets caused or contributed in any way to the blowout. Hunt made such allegations, but Bituminous settled Hunt's claim, and that issue was never adjudicated. Sheets denied responsibility for the failure of the lead joint, and the trial court, as trier of fact, accepted Sheets' version. Thus, the record also supports the trial court's finding that exclusion (k) is inapplicable.

■ It is unnecessary to decide whether the conflicting provisions within the policy render the contract of insurance ambiguous as a whole. Because the insured brought the loss within the terms of the policy and the insurer failed to prove the applicability of either exclusionary clause, the judgment will be

*Affirmed.*