**SENTINEL ASSOCIATES, Plaintiff,**

v.

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 3:92CV192.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 26, 1992.

Samuel Walter Hixon, III, William Rutherford Mauck, Jr., Williams, Mullen, Christian & Dobbins, Richmond, Va., for plaintiff.

Pamela Michele Pearson, Hunter C. Quick, Cozen & O'Connor, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before this Court on defendant's motion, pursuant to Fed.R.Civ.P. 56, for summary judgment. In the underlying claim, plaintiff Sentinel Associates ("Sentinel") alleges a breach of an "all-risk" insurance contract by defendant American Manufacturers Mutual Insurance Co. ("AMMI"). For the reasons set forth below, defendant's motion for summary judgment is DENIED.

## I.

Plaintiff Sentinel is a New York partnership which owns and manages various commercial properties, including the Mid–City Shopping Center in Portsmouth, Virginia. The shopping center was insured by an "all-risk" insurance policy, No. 3MH 101 526–01, purchased from defendant AMMI, an Illinois corporation with a branch office and registered agent in Richmond, Virginia.

The policy covered all physical damage to the property, except for certain damages specifically excluded. At issue with respect to defendant's motion for summary judgment are Sections F and G of the policy, which state, in part:

F. COVERED CAUSES OF LOSS

We insure covered property against risks of direct physical loss or damage from external causes ... unless the loss is:

1. Excluded in Section G, Exclusions; or

2. Limited in Section H, Limitations; that follow.

G. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \* \* \* \*

b. Earth Movement

1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft or explosion results, we will pay for that resulting loss or damage.

\* \* \* \* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \* \* \* \*

d. (1) Wear and tear;

2) Shrinkage, evaporation, loss of weight, change in flavor, color, rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\* \* \* \* \* \*

5) Settling, cracking, shrinking or expansion;

\* \* \* \* \* \*

But if loss or damage by the "specified causes of loss" or building glass

breakage results, we will pay for that resulting loss or damage.

"Specified causes of loss" include water damage, defined as "accidental discharge or leakage of water or steam from any part of a system or appliance containing water or steam."

On or about July 6, 1990, employees of the Smith & Welton department store, a tenant in the shopping center, discovered substantial cracking in the ceiling and walls throughout the store. Further inspection revealed cracks and loose bricks in one corner of the building and a deeply cracked and settled interior rear wall, as well as other damage.

Plaintiff informed defendant of the damage and, following an investigation, defendant denied coverage on the claim. Plaintiff then brought the present action, alleging that defendant breached the insurance policy by denying coverage.

The parties disagree as to the cause of the damage to the shopping center. Plaintiff contends that the damage was caused by a broken pipe which, between May and September 1989, leaked approximately 570,-000 gallons of water into the soil beneath the Smith & Welton store. This leak, according to plaintiff's expert, NTH Consultants, Ltd.,

> appears to have disturbed the native silty sand soils and carried some of the finer fractions of soil into the backfill zones of existing underground lines, or even into the lines themselves. This condition in turn would have resulted in undermining and subsidence of supported structures causing the observed distress. In addition, the release of water may also have temporarily loaded the underlying compressible organic soils and contributed to consolidation in the underlying organic silty clay soil.

Defendant, on the other hand, contends that such a leak never occurred. Defendant suggests that the higher-than-normal water consumption at the shopping center in the summer of 1989 resulted not from a leaking pipe, but rather from a malfunctioning air conditioning unit at the Smith & Welton store, which defendant claims was continually sprayed with water to cool down its compressor. Subsidence of the soil beneath the shopping center, defendant contends in its memorandum, was inevitable,

> regardless of any leak, because of the type of soil and organic material on which the Shopping Center was constructed and the natural effects of this structure existing on this soil and material over time. The structure essentially was built on peat moss and sand.

For the purpose of its summary judgment motion, defendant accepts plaintiff's version of the facts, but argues that the policy does not cover plaintiff's loss even if plaintiff's theory about the cause of the damage to the shopping center is correct.

## II.

Under Rule 56(c), a motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Magill v. Gulf & Western Indus., Inc.,* 736 F.2d 976, 979 (4th Cir.1984) (quoting Fed.R.Civ.P. 56(c)); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Houchens v. American Home Assurance Co.,* 927 F.2d 163, 165 (4th Cir.1991). "Where ... the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ The party moving for summary judgment always bears the initial burden of informing the district court of the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Any inferences "drawn from the underlying facts contained in the materials before the trial court must be viewed in the light most

favorable to the party opposing the motion." *Helm v. Western Md. Ry.*, 838 F.2d 729, 734 (4th Cir.1988).

For purposes of analyzing this summary judgment motion, this Court therefore assumes that plaintiff's theory as to the cause of the damage to the shopping center is correct, and must determine whether, with the facts thus "viewed in the light most favorable" to the plaintiff, the policy covered the damage.

## III.

The law governing the interpretation of insurance policies in Virginia is well-established. In a recent case, the Virginia Supreme Court restated the following "familiar principles":

> Where an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies on exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case.... Further, because insurance contracts are ordinarily drafted by insurers rather than by policyholders, [Virginia] courts consistently construe such contracts, in cases of doubt, in favor of that interpretation which affords coverage, rather than that which withholds it. Policy language purporting to exclude certain events from coverage will be construed most strongly against the insurer.

*Bituminous Cas. Corp. v. Sheets*, 239 Va. 332, 389 S.E.2d 696, 698 (1990).

It is therefore incumbent upon an insurer to employ exclusionary language that is clear and unambiguous. Language is ambiguous, under Virginia law, when it may be understood in more than one way.

*American Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 385 S.E.2d 583, 585 (1989).

Defendant AMMI, in its memorandum in support of its summary judgment motion, contends that the insurance policy's earth movement clause "clearly and unambiguously ... preclud[es] coverage for *any* form of earth movement regardless of its cause or scope." The policy's language, however, belies defendant's claim.

The policy refers to "[a]ny earth movement ... such as an earthquake, landslide, or earth sinking, rising or shifting." This language clearly may be understood to have a meaning other than that assigned to it by defendant.

Virginia courts have long recognized the doctrine of *noscitur a sociis*, which holds that "when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words." *Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 331 S.E.2d 476, 481 (1985).[1] Here, the general term "earth movement" therefore must be read to refer to events similar in nature to "earthquakes, landslides, [and] earth sinking, rising or shifting"—all of which are natural phenomena.[2] Taking the phrase in this context, and applying the rule that ambiguities in such clauses must be resolved in favor of the insured, the earth movement clause must be read as referring only to phenomena resulting from natural, rather than man-made, forces.

While this policy must be analyzed based on its own unique language, which has not been confronted previously in any reported decision, it is nonetheless helpful to note

---

**1.** A closely related doctrine, *ejusdem generis,* states:

> [W]here general words follow an enumeration of persons or things by words of a particular and specific meaning, the general words are not to be construed in their widest extent; but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. In other words, general words in such a situation are to be restricted to a sense analogous to the

less general. *Noscitur a sociis* applies,—they are known by their associates.

*East Coast Freight Lines v. City of Richmond,* 194 Va. 517, 74 S.E.2d 283, 288 (1953).

**2.** Even the term "earth movement" itself has been defined by reference to natural phenomena: "differential movement of the earth's crust: elevation or subsidence of the land: diastrophism, faulting, folding." *Webster's Third New Int'l Dictionary* 715 (1971).

that numerous courts faced with analogous language have reached similar conclusions. *See, e.g., Peters Township School Dist. v. Hartford Accident & Indem. Co.,* 833 F.2d 32, 33 (3d Cir.1987); *Peach State Uniform Service, Inc. v. American Ins. Co.,* 507 F.2d 996, 1000 (5th Cir.1975); *Gullett v. St. Paul Fire & Marine Ins. Co.,* 446 F.2d 1100, 1103–04 (7th Cir.1971); *Wyatt v. Northwestern Mut. Ins. Co.,* 304 F.Supp. 781, 783 (D.Minn.1969); *Steele v. Statesman Ins. Co.,* 530 Pa. 190, 607 A.2d 742, 743 (1992); *Bly v. Auto Owners Ins. Co.,* 437 So.2d 495, 497 (Ala.1983); *New Hampshire Ins. Co. v. Robertson,* 352 So.2d 1307, 1310 (Miss.1977); *Wisconsin Builders, Inc. v. General Ins. Co.,* 65 Wis.2d 91, 221 N.W.2d 832, 837 (1974).

■ With the policy's "earth movement" clause thus construed to encompass only natural phenomena, the unresolved factual questions concerning the cause of the subsidence that led to the damage in this case become crucial. If natural forces led to the damage, the exclusion will apply. If a leaking water pipe—a man-made problem—caused the damage, however, the exclusion is inapplicable. Since there is thus a genuine issue as to a material fact, defendant's motion for summary judgment cannot be granted based on the earth movement clause.

Defendant, in its memorandum and argument, relies primarily on four cases involving policy language easily distinguishable from that in the case at bar. All four involved State Farm insurance policies whose earth movement clauses contained both a lead-in clause excluding damage caused by earth movement "regardless of ... the cause," and specific reference to earth movement "whether combined with water or not." *State Farm Fire & Cas. Co. v. Martin,* 872 F.2d 319, 321 (9th Cir. 1989); *Schroeder v. State Farm Fire & Cas. Co.,* 770 F.Supp. 558, 560 (D.Nev. 1991); *Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 804 P.2d 822, 825 (Ct. App.1990); *Village Inn Apartments v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 582 (Utah Ct.App.1990).

It is true, as defendant notes, that those policies and the AMMI policy at issue here all contain certain language referring to other causes acting "concurrently or in any sequence" with an excluded event. *Martin,* 872 F.2d at 321; *Schroeder,* 770 F.Supp. at 560; *Millar,* 804 P.2d at 825; *Village Inn,* 790 P.2d at 582. The court in *Village Inn,* however, relied primarily on the "regardless of ... cause" and "combined with water" language not present in the policy here, 790 P.2d at 583, and its reasoning was expressly adopted by the courts in *Schroeder* and *Millar. Schroeder,* 770 F.Supp. at 560; *Millar,* 804 P.2d at 825. *Martin,* meanwhile, is distinguishable on its facts. In *Martin,* it was undisputed that the damage at issue was caused either by natural processes or by construction defects unrelated to earth movement, and it was therefore unnecessary for the court to consider any possible distinction between natural and other earth movements. *State Farm Fire & Cas. Co. v. Martin,* 668 F.Supp. 1379, 1381 (C.D.Cal. 1987), *aff'd,* 872 F.2d 319 (9th Cir.1989).

### IV.

■ Defendant next contends that other provisions in the policy exclude coverage of plaintiff's loss as a matter of law, even if the earth movement clause does not. In particular, defendant relies on the statement in Section G of the policy that AMMI

will not pay for loss or damage caused by or resulting from ... [s]ettling, cracking, shrinking or expansion ... [b]ut if loss or damage by the "specified causes of loss" [including "water damage" as defined *supra*] ... results, we will pay for that resulting loss or damage.

It is true that some of the damage to plaintiff's shopping center took forms that might be described as "settling" and "cracking." The Virginia Supreme Court has held, however, that an exclusion similar to that set forth above is not applicable in situations where a "peril not otherwise excluded" caused those forms of damage. *Fidelity & Guaranty Ins. Underwriters, Inc. v. Allied Realty Co.,* 238 Va. 458, 384 S.E.2d 613, 616–17 (1989). *See also New*

*Hampshire Ins. Co. v. Robertson,* 352 So.2d 1307, 1310 (Miss.1977) ("settling and cracking" exclusion, "in context of a clause excluding loss by wear and tear, deterioration, ... etc. [as here] ... would appear to exclude loss by settling and cracking due to ordinary swelling, expansion, settling or cracking as opposed to settling or cracking caused by some other external agent (here the water leak)"); *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 695, 377 P.2d 889, 895 (1963) ("settling" exclusion not applicable where broken sewer pipe, not natural settling, was "efficient proximate cause of the loss"); *Holy Angels Academy v. Hartford Ins. Group,* 127 Misc.2d 1024, 487 N.Y.S.2d 1005, 1007 (Sup.Ct.1985) (ordinary individual could conclude such exclusion "was limited in meaning to the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of its construction materials," and did not include settling caused by subway construction nearby); *Barash v. Insurance Co. of N. Am.,* 114 Misc.2d 325, 451 N.Y.S.2d 603, 606 (Sup.Ct.1982) ("settling" implies "the normal, gradual readjustment of the building materials when it occurs in foundations, walls, floors or ceilings").

Here, if plaintiff's version of the facts is correct, a leaking water pipe—a "peril not otherwise excluded" under the policy—caused the cracking and settling of plaintiff's shopping center. If that is the case, the plaintiff's loss does not fall within the scope of the exclusion set forth above, and is therefore covered by the policy.[3]

With the ambiguity in the policy's exclusionary language thus resolved, the resolution of the factual question of whether a leaking pipe caused plaintiff's loss is again essential to the resolution of this action, and a summary judgment therefore cannot be granted.

**3.** Given this construction of the exclusion's language, it is not necessary to address defendant's contention that plaintiff's loss does not fall into the exception in the exclusion for "specified causes of loss," including settling and cracking caused by "water damage." Defendant argues that "water damage" is limited to situations involving water above the surface of the ground.

V.

For the reasons set forth above, this Court determines that genuine issues as to material facts remain to be resolved in this case, and that defendant is therefore not entitled to a judgment as a matter of law. Defendant's motion for summary judgment is therefore DENIED.

And it is SO ORDERED.

No such limitation is apparent, however, from the "water damage" definition in the policy. *Cf. Hartford Accident and Indem. Co. v. Phelps,* 294 So.2d 362, 364 (Fla.Dist.Ct.App.1974) ("water damage due to a break in the plumbing system ... is no less worthy of coverage simply because a part of that plumbing system was beneath the ground").