**Mary BAILEY, Plaintiff,**

v.

**BLUE CROSS/BLUE SHIELD OF VIRGINIA, Defendant.**

No. 2:94cv897.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 31, 1994.

Timothy G. Clancy, Cummings, Hatchett, Moschel & Patric, Hampton, VA, Robert E. Hoskins, Foster & Foster, Greenville, SC, for plaintiff.

Richard J. Cromwell, Thomas E. Spahn, Robert W. McFarland, McGuire, Woods, Battle & Boothe, Norfolk, VA, Jeanette D. Rogers, Blue Cross/Blue Shield of Va., Legal Dept., Richmond, VA, for defendant.

### *ORDER*

CLARKE, District Judge.

This case is currently before the Court on cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**. A Permanent Injunction is also issued against the Defendant enjoining it from denying coverage for high dose chemotherapy, radiation treatment and the hospitalization associated with such treatment.

### *FACTS*

Mary Bailey, Plaintiff, was diagnosed with breast cancer in 1990. In 1994, Plaintiff's cancer metastasized so as to become stage IV breast cancer. The Plaintiff's treating physician, Dr. Thomas Alberico, a practicing oncologist, recommended to the Plaintiff that her best chance for living was to receive high-dose chemotherapy ("HDC") with peripheral stem cell rescue ("PSCR").

HDC/PSCR as it is to be administered to Plaintiff includes several stages. The first stage consists of the administration of low doses of chemotherapeutic agents, and Plaintiff has already undergone this stage. During the second stage, Plaintiff will be administered moderate doses of chemotherapeutic agents. During this phase of treatment, Plaintiff's body will produce extra amounts of

components of the blood known as stem cells, and immediately subsequent to this stage, Plaintiff will have stem cells removed by a procedure known as leukapheresis. The stem cells will be quickly frozen and stored in liquid nitrogen.

Subsequent to the leukapheresis stage, Plaintiff will receive high doses of standard chemotherapeutic agents. Plaintiff's cancer cells should be killed along with healthy white blood stem cells by the treatment at this stage. After the infusion of the above chemotherapy, Plaintiff will have her previously collected stem cells reinfused into her system so that her body will begin to rebuild the depleted stem cell count. Subsequent to re-administration of the stem cells, Plaintiff likely will be hospitalized for a short period for observation. Plaintiff has undergone the standard chemotherapy, a necessary prelude to high-dose chemotherapy, and on September 26, 1994 Plaintiff began the HDC/PSCR treatment.

The Plaintiff's husband is an employee of Bailey Enterprises and the Plaintiff has insurance with Defendant through Bailey Enterprises. Plaintiff states in her affidavit that she understood that the treatment would cost between $80,000 and $150,000. Her husband, Byron Bailey, testified that Response Technologies, the provider of the treatment, later informed him that the cost of treatment will be between $90,000 and $100,000.

On June 23, 1994, Response Technologies wrote Defendant on behalf of Mrs. Bailey and sought coverage for high dose chemotherapy with peripheral stem cell support. On June 24, 1994, Defendant denied the request stating that proposed procedure was not covered under the contract.

Plaintiff began her chemotherapy treatment in May 1994. Despite the denial letter, received on June 24, 1994, Plaintiff continued to seek medical treatment. Plaintiff's treatment includes high dose chemotherapy, radiation, and peripheral stem cell rescue. On September 28, 1994, this Court issued a preliminary injunction, enjoining Defendant from denying coverage for the high dose chemotherapy and radiation treatment.[1] This case now comes before the Court on the parties' cross-motions for summary judgment.[2] By an agreement between the parties, the case was submitted on the briefs alone, without a trial, hearing or oral argument.

## ANALYSIS

### I. Standard of Review & Procedural Posture

Rule 56 provides that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56. A "motion for summary judgment may be granted if the question to be determined involves the construction of a written agreement which is set out in full in the complaint since the question is one of law." *Noel v. Baskin*, 131 F.2d 231 (D.C.Cir. 1942).

This case involves a question of contract interpretation. Before turning to the exclusion at issue, the Court must address the applicable standard of review. The standard of review the Court must use is governed by the Employee Retirement Income Security

---

1. Plaintiff did not seek coverage for the peripheral stem cell rescue, the procedure which provides support for a patient receiving high dose chemotherapy. Plaintiff only sought coverage for the administration of the HDC and services specifically related to that treatment and for the subsequent hospitalization and services provided during the hospitalization.

2. By agreement of the parties each side choose to submit a Motion for Summary Judgment and supporting Memoranda and neither party choose to file a responsive Memorandum. Furthermore, Plaintiff acknowledged that the Defendant included additional affidavits in support of summary judgment and still chooses not to respond; although, the Court does note that in Plaintiff's letter confirming the decision to not respond to the affidavits, Plaintiff did comment on the contents of the affidavit of Dr. J. Lawrence Colley.

Act ("ERISA"). 29 U.S.C. § 1001 et seq. (1985 & Supp.1994). Court actions challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B) are subject to the standard of review announced in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *Firestone* held that in reviewing actions of a fiduciary who has been given discretionary powers to determine eligibility for benefits and to construe the language of an ERISA plan deference must be shown, and the fiduciary's actions will be reviewed only for abuse.[3] *Id.* at 113, 109 S.Ct. at 956. However, the Court went on to recognize that a conflict of interest could lower the level of deference to be applied to a discretionary decision by a fiduciary. "[I]f a benefit plan gives discretion to an administrator ... who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts § 187 comment d (1959)).

Furthermore, the Fourth Circuit Court of Appeals has held:

> [W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries.

*Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80, 87 (4th Cir.1993). More recently, the Western District of North Carolina has held that an ERISA health plan administrator's role as both the fiduciary of plan and an employee of the plan provider presented a conflict of interest warranting a less deferential review of administrator's decision to deny benefits than the abuse of discretion standard which otherwise would

have applied. *Foster v. State Farm Mut. Auto. Ins. Co.,* 843 F.Supp. 89, 92 (W.D.N.C. 1994). *Foster* held that the administrator had a conflict between his duty to minimize employer's costs and his fiduciary duties to those covered by plan. *Id.* As the *Doe* Court recognized, "Even the most careful and sensitive fiduciary in those circumstances may unconsciously favor its profit interest over the interest of the plan, leaving beneficiaries less protected than when the trustee acts without self-interest and solely for the benefit of the plan." *Doe,* 3 F.3d at 86, 87. In *Foster,* the Court held:

> the Court must determine if the administrator faithfully executed its duty to interpret the Plan "solely in the interests of the participants and beneficiaries ... for the purpose of providing benefits [to them] ... with the care, skill, prudence, and diligence under the circumstances prevailing that a prudent man acting in like capacity ... would use ..." despite the conflict.

*Foster,* 843 F.Supp. at 93. (quoting 29 U.S.C. § 1104(a)(1)(A, B)). Defendant has conceded that this lower standard applies. The Comprehensive Group Policy ("Policy") in issue gives Blue Cross discretion in making coverage decisions.[4] Blue Cross clearly exercises discretionary authority or discretionary control with respect to the management of the plan and therefore qualifies as a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A). *See Doe,* 3 F.3d at 87. With that lessened degree of deference to Blue Cross' discretionary interpretation of the group insurance contract, we turn to review Blue Cross' decision to deny benefits.

## II. *The Contract*

To determine whether the procedures for which coverage was claimed are covered by the Blue Cross contract, the Court must first consider the nature of the treatment for which benefits are sought.

---

**3.** In the instant case, Defendant relies on the affidavit of Dr. J. Lawrence Colley, its Vice President in charge of the Corporate Medical Policy division, in support of its position that under the contract language HDC administered in conjunction with PSCR is clearly excluded.

**4.** The Policy states, "[t]he extent to which a Covered Person is entitled to benefits under the Policy shall be determined by the Company in its sole discretion." Policy at 23.

As outlined above, Plaintiff has stage IV breast cancer. The Plaintiff is being treated by a procedure known as HDC/PSCR. As part of this treatment, Plaintiff will receive chemotherapeutic agents, approved by the Federal Drug Administration, in high doses. The high doses of the chemotherapy are intended to kill the cancerous cell polluting Plaintiff's body, but they also kill healthy white blood cells which make up the body's immune system. Without healthy white blood cells, an individual does not have a healthy immune system and without an immune system, an individual is susceptible to infection and death. To rebuild the body's immune system, healthy white blood cells are removed prior to the administration of the high dose chemotherapy and reinfused subsequent. After reinfusion of the healthy white blood cells, the white blood cells begin to reproduce themselves and the immune system, thereby preventing infection. The PSCR in no way directly treats the cancer, and it is only the chemotherapy treatment which is intended to kill the cancer.

It is undisputed that the Policy specifically provides that chemotherapy treatment is a "therapy service":

> Therapy services which are rendered to an outpatient by a covered facility or provider are covered. Any one of the following therapy services prescribed by a provider licensed to do so may be furnished and billed whereby a therapist appropriately licensed, certified or otherwise qualified (as determined by the Company), to render such services.

As defined in the Policy, "Therapy Services" includes radiation therapy and chemotherapy.[5] There is no doubt that the outpatient chemotherapy Plaintiff will receive is specifically covered under the Policy as a therapy service. In fact, this point was not contested by Defendant. The real issue is whether the treatment being rendered in this case is excluded. The policy has exclusions as follows:

EXCLUSIONS:
The following is a list of services which will not, under any circumstances, be covered.

.　　.　　.　　.　　.

*AMENDMENT*
(2) Autologous bone marrow transplants or other forms of stem cell rescue (in which the patient is the donor) with high dose chemotherapy and/or radiation are not covered.
The following are exceptions: (Several types of cancer are listed in this section, none of them being the Plaintiff's cancer.) Autologous bone marrow transplants and other forms of stem cell rescue (in which the patient is the donor) with high dose chemotherapy and/or radiation for all other cases are not covered.
These include but are not limited to the following ... breast cancer.

The above exclusion undoubtedly, specifically, excludes the peripheral stem cell rescue when accompanied by high dose chemotherapy. The question is, is the above exclusion intended to exclude the HDC treatment administered during the same overall treatment plan as the stem cell rescue.

**A.  Plaintiff's Argument**

Plaintiff submits that the clause, "with high dose chemotherapy" could be interpreted in more than one way. First, it could be interpreted to mean that the stem cell rescue and all HDC administered during the same treatment plan are excluded. The clause could also be interpreted to mean that stem cell rescue only when administered with HDC is excluded. This interpretation would not include HDC, which is specifically covered under the policy, as part of the exclusion. The latter interpretation is possible because the clause uses the ambiguous term "with".

Pursuant to the *Doe* case, ambiguous terms in an insurance policy are to be construed in favor of coverage and against the insurance company when the discretionary interpretation to the contrary is not entitled to the deference that might otherwise apply.

---

**5.** Chemotherapy is defined as "the treatment of malignant disease by chemical or biological anti- neoplastic agents." Policy at 7.

*See Doe,* 3 F.3d at 89. Furthermore, *Doe* stated, "[an] exclusion should not, in the absence of clear language, be construed to withdraw coverage explicitly granted elsewhere in the contract." *Id.* at 88.

In the instant case, the Policy does explicitly provide for chemotherapy under its "therapy services" and it is unclear whether the exclusion clearly includes the HDC. As set forth in the affidavit of Dr. Elizabeth Harden, all the phases and procedures involved in Plaintiff's treatment are somewhat interrelated in the sense that they are all administered as part of one treatment plan geared towards ultimately curing Plaintiff's condition, but the phases are separate and distinct phases of treatment. Furthermore, Dr. Harden states that the treatment which is intended to "cure" Plaintiff is the HDC aspect of the treatment; whereas the PSCR is but a support procedure and is a very minor portion of Mrs. Bailey's overall treatment plan.

## B. Defendant's Argument

On the other hand, the Defendant argues that there is nothing even remotely ambiguous about the exclusion in the Policy. The Defendant sets forth several arguments. First, Defendant cites to *Brand Distribs., Inc. v. Insurance Co. of N. America,* as defining when a word is ambiguous:

> only when it is found to be of uncertain meaning by persons of competent skill and information; that is, when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of customs, practices, usage and terminology as generally understood in the particular trade or business.

400 F.Supp. 1085, 1090 (E.D.Va.1974), *rev'd on other grounds,* 532 F.2d 352 (4th Cir. 1976). The Defendant contends that when viewed objectively by a person who has an awareness of the customs, practices and terminology as generally understood in the particular trade, the Policy exclusion is not ambiguous. Yet, the Court notes that more recently, the Eastern District of Virginia has held that an insurance contract that supports two equally fair interpretations is ambiguous.

*Atkinson Dredging Co. v. St. Paul Fire & Marine Ins. Co.,* 836 F.Supp. 341, 344 n. 8 (E.D.Va.1993).

Defendant asserts there is only one reasonable interpretation of the language. It is the Defendant's position that the only reasonable interpretation is that the clause "with high dose chemotherapy" describes the other important component of a single treatment plan which also involves autologous peripheral stem cell rescues, the entirety of which is excluded.

Blue Cross interprets the word "with" as synonymous with the word "and" and it views both the autologous peripheral stem cell rescue and the high dose chemotherapy as excluded. In choosing to view the words "with" and "and" as synonymous, Defendants rely on the "nature of the procedure" to reinforce this conclusion. Defendants then go on to state that since 1) Mrs. Bailey herself acknowledges that HDC/PSCR is a single procedure with a number of components; 2) Response Technologies described the plan as having a number of "components"; and 3) case law states that HDC/PSCR is one unified treatment plan, that "with" and "and" are synonymous. However, the Court finds such reasoning unpersuasive.

Also in support of their position that "with" and "and" are synonymous, Defendant relies on an affidavit attached to its Motion for Summary Judgment. Blue Cross filed the affidavit of Dr. J. Lawrence Colley, a Vice President of Blue Cross in charge of the Corporate Medical Policy division in which Dr. Colley states:

> autologous bone marrow transplants or other forms of autologous stem cell rescue are dealt with in Paragraph 2 of the Policy exclusion. These procedures would obviously be of no benefit by themselves. Instead, they are used only as a form of rescue following high dose chemotherapy or radiation.

Relying on this assertion, Dr. Colley goes on to conclude: "the word "with" is synonymous with the word "and" because autologous transplants or other forms of autologous

stem cell rescue would never be used without high dose chemotherapy or radiation."

The Court finds the Defendant's position unpersuasive and concludes that the exclusion is indeed unclear and ambiguous. First, the Court notes that it is a question of law for the Court to decide if the contract is ambiguous. *Atkinson Dredging Co.,* 836 F.Supp. at 345 n. 11; *Nehi Bottling v. All–American Bottling,* 8 F.3d 157, 161 (4th Cir. 1993). The Court finds that the clause could be read as meaning that a peripheral stem cell rescue and all HDC administered during the same treatment plan are excluded; but at the same time, the Court also finds that the exclusion could be interpreted as meaning that the stem cell rescue, only when administered with the HDC, which is otherwise specifically covered under the policy, is excluded.

Defendant relies on the defense that HDC and PSCR are a "single procedure" and thus the "with" must be considered "and." The Court finds that the argument as set forth by the Defendant, including the affidavit of Dr. Colley is insufficient and unpersuasive. Both parties were given the opportunity to call witnesses and present additional evidence and both sides declined. The record does not preclude the possibility that there may indeed be cases where HDC is not accompanied by PSCR or ABMT. They certainly are different procedures in that they are administered at different times and for different purposes. The purpose of HDC is to kill the cancer; whereas, the purpose PSCR is to restore the immune system.

In *Doe,* the Fourth Circuit has recently found that a Blue Cross Policy exclusion at issue in that case was not explicit enough in excluding the HDC portion of the unified treatment plan. *Doe* stated, "[w]hile Blue Cross is well within its rights to exclude from coverage the ancillary bone marrow transplant procedure, the exclusion should not, in the absence of clear language, be construed to withdraw coverage explicitly granted elsewhere in the contract." *Doe,* 3 F.3d at 88. Defendants contend that in the current policy the HDC is specifically identified as part of the excluded procedure and therefore an ambiguity does not exist. In *Doe,* the disputed clause, "services or supplies for or related to" was ambiguous. In *Doe,* Blue Cross argued that the language reached to exclude HDC and radiation treatment because without the ABMT, the HDC could not be performed. In rejecting this argument, the Fourth Circuit stated that "the first question to be asked, therefore, is whether the cancer treating procedure is covered by the contract." *Id.* As in *Doe,* the answer in the instant case is clearly yes.

The question then becomes whether Blue Cross clearly excluded the HDC. Plaintiff submits that the contract is ambiguous because, as noted above, more than one reasonable interpretation exists. Defendants concede that Plaintiff is theoretically correct that the Policy exclusion could be read in two way; however, Defendants assert that the second interpretation is not reasonable and therefore does not create an ambiguity.[6]

Defendant is relying on language in a section of the policy which covers exclusions. The section in question states that PSCR is not covered if the patient is also receiving HDC in the same procedure. The HDC is specifically included elsewhere in the Policy.[7] Several Courts have held that exceptions to the basic, underlying contract obligation must be stated clearly to apprise the insured of the effect of those exceptions. *See Sentinel Associates v. American Mfrs. Mut. Ins.,* 804 F.Supp. 815 (E.D.Va.1992) (holding that

---

6. Defendants support this position further by stating that this is especially true when Blue Cross is given the deference to which it is entitled in interpreting the Policy. However, as noted in *Doe,* the Court may take account of the principle that in making a reasonable decision, ambiguity which remains in the exclusion must be construed against the drafting party. *Doe,* 3 F.3d at 89. *See also Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 539 (9th Cir.1990) (using a presumption such as construction against the

drafter in evaluating the reasonableness of an interpretation is not inconsistent with review for abuse of discretion).

7. The Court also notes that Blue Cross could very easily have said in the "Therapy Services" section, the section that provides for high dose chemotherapy, "except when administered in conjunction with PSCR or ABMT or other forms of cell rescue."

"it is incumbent upon an insurer to employ exclusionary language that is clear and unambiguous. Language is ambiguous, under Virginia law, when it may be understood in more than one way."); *Interstate Fire & Cas. Co. v. Stuntman Inc.,* 861 F.2d 203, 204–05 (9th Cir.1988); *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 108, 419 P.2d 168, 172 (1966);

In applying this reasoning to the instant case, the Court finds that the Defendants did not clearly exclude the HDC which if finds was specifically provided for elsewhere in the Policy, and as such the ambiguous clause is construed against the insurer. The Court makes this finding in light of the deference to be accorded to the administrator of the Policy under the facts of this case.

### CONCLUSION

For the foregoing reasons, Summary Judgment is rendered in favor of the Plaintiff and the Defendant's Motion for Summary Judgment is denied.

The issues in this case having been fully decided, the Permanent Injunction requested by the Plaintiff is also granted and the Defendant is enjoined from denying coverage for high dose chemotherapy, the radiation treatment and the hospitalization associated with such treatment for the Plaintiff's treatment for breast cancer.

The Clerk is directed to mail a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**