## CIRCUIT COURT OF THE CITY OF NORFOLK

Dale W. Marshall
and Susan Marshall

v.

Selective Ins. Co. of Am.

October 24, 1995

Case No. (Law) L95-375

BY JUDGE MARC JACOBSON

Four lawsuits were brought against Dale W. Marshall and Susan Marshall (Plaintiffs) seeking damages for the alleged wrongful deaths of William E. Dempsey, William E. Staton, Julia M. Dempsey, and Lakeshia Dempsey, respectively (underlying lawsuits). Plaintiffs filed a Motion for Declaratory Judgment against Selective Insurance Company of America (Selective) to construe an insurance contract or policy between the Plaintiffs and Selective (policy) and seeking the Court to declare that Selective has a "contractual duty to provide defenses and indemnification" to the Plaintiffs "as a result of the occurrence of December 9, 1994, and all causes of action which may arise therefrom" (underlying lawsuits). Selective filed a Counterclaim for Declaratory Judgment seeking the Court to declare that under and pursuant to the terms and provisions of the policy that Selective "is under no obligation to defend Dale W. Marshall or Susan Marshall against the allegations of the underlying lawsuits" and that "Selective is under no obligation to indemnify Dale W. Marshall or Susan Marshall for any judgment entered against them in any of the underlying lawsuits." Both Plaintiffs and Selective seek summary judgment on their respective Motions for Declaratory Judgment suits. The plaintiffs, in the underlying lawsuits, also filed a brief and appeared and argued *ore tenus* relative to the said summary judgment motions.

The underlying lawsuits allege that William E. Dempsey, William E. Staton, Julia M. Dempsey, and Lakeshia Dempsey were occupying a residence leased from the Plaintiffs at 208 West 30th Street, Norfolk, Virginia. On December 9, 1994, William Dempsey, Julia Dempsey, Lakeshia Dempsey, and William Staton were all found dead at said premises allegedly as a result of carbon monoxide gas which accumulated and escaped. The policy provides that Selective would "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury (including death) ... to which this insurance applies."

The policy further contains as an endorsement titled "Pollution Exclusion" the following provisions:

We shall have no obligation under this coverage form:

a. to investigate, settle or defend any claims or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which:

1. arises out of the "pollution hazard"; or

2. would not have occurred but for the "pollution hazard"; or

b. to pay any damages, judgments, settlements, losses, costs or expenses of any kind or nature that may be awarded or incurred by reason of any such claim or suit or any such actual or threatened injury or damage; or

c. for any losses, costs or expenses arising out of any obligation, order, direction or request of or upon any insured or others, including but not limited to any governmental obligation, order, direction or request, to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

"Pollution hazard" means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any "pollutants" arising out of the discharge, dispersal, seepage, migration, release or escape of such "pollutants" into or upon the land, the atmosphere or any water course or body of water ... .

The basic issue as to both the original Motion for Declaratory Judgment filed by Plaintiffs and the Counterclaim for a Declaratory Judgment filed by

504

Selective is the interpretation of the portion of the policy set forth in the paragraphs hereinabove, generally referred to as the "pollution hazard" exclusion.

Plaintiffs claim the "pollution hazard" exclusion is not applicable to the underlying lawsuits. Selective contends that the "pollution hazard" exclusion relieves it of any duty to defend or indemnify Plaintiffs in regard to the underlying lawsuits.

In Virginia, "a court must adhere to the terms of a contract as written, if they are plain and clear and not in violation of law." *Blue Cross & Blue Shield v. Keller*, 248 Va. 618, 626 (1994). A court will not "make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." *Id.* However, "policy language purporting to exclude certain events from coverage will be construed most strongly against the insurer." *Bituminous Casualty Corp. v. Sheets*, 239 Va. 332, 336 (1990). Furthermore, "doubtful ambiguous language in an insurance policy will be given an interpretation that grants coverage rather than withholds it." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 233 (1992) (*citing St. Paul Ins. v. Nusbaum & Co.*, 227 Va. 407, 411 (1984)).

In Virginia, " 'ambiguity' is defined ... [as] 'the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time'." *Berry v. Klinger*, 225 Va. 201, 207 (1983) (quoting *Webster's Third International Dictionary* 66 (3d ed. 1976)).

Thus, the central question facing this Court is whether there is ambiguity in the "pollution hazard" exclusion clause in the policy. If there is ambiguity, the portion of the policy that contains the ambiguity will be construed against the insurer; if there is not, the portion of the policy that contains the alleged ambiguity will be upheld.

It does not appear that Virginia has addressed the question of whether "pollution hazard" exclusion clauses, such as the one at issue here which refers to a "discharge" of "pollutants" into the "atmosphere", are ambiguous when applied to cover the release of carbon monoxide within a residential building. However, other jurisdictions have addressed the construction and validity of "pollution hazard" exclusion clauses contained in various insurance policy provisions, some of which are similar to and some of which are distinguishable from the language contained in the instant case and policy.

In the case of *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 656 A.2d 142 (Pa. Super. 1995), a gas heater in the basement of a restaurant became clogged. As a result, fumes and gases escaped and seeped into the dining area of the restaurant, and several customers were injured. *Id.* at 143. The owner of the

restaurant also had an insurance policy written by Selective which contained a "pollution hazard" exclusion clause nearly identical in its relevant portions to the one at issue here. *Id.* at 143. The Pennsylvania court, using rules of construction substantially similar to those used in Virginia, determined that the clause was ambiguous. *Id.* at 143-44. The court's ruling hinged on the language in the policy which excluded from coverage the discharge of "pollutants" into "the atmosphere." The court stated that the term "atmosphere" could mean several things — it could mean the air inside the restaurant, but it was more reasonable not to construe the word in such a fashion. *Id.* at 144. As a result of the ambiguity the court construed the contract against the insurer, and denied effect to the "pollution hazard" exclusion clause. *Id.* at 146-47.

In *Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 888 (Minn. 1994), a case relied upon by the *Gamble Farm* court, the Minnesota Supreme Court was faced with a "pollution hazard" exclusion clause similar to the one contained in the Plaintiffs' policy. There the court faced an argument from the insurer that the clause excluded from coverage damages caused by the release of asbestos fibers into the building interiors. The court ruled that the clause was ambiguous based on the term "atmosphere." *Id.* at 892. The court stated that the term "atmosphere" was more reasonably construed to mean the air in the natural environment, not the air within a particular building. *Id.* at 892-893; *see Lumbermans Mut. Cas. Co. v. S. W. Industries, Inc.*, 39 F.3d 1324, 1337 (6th Cir. 1994) (holding that fumes remaining within plant had not been discharged into the "atmosphere"). Thus, the court ruled that the clause did not exclude the asbestos related damages from coverage.[1]

Another case very similar to the one at bar is *Thompson v. Temple*, 580 So. 2d 1133 (La. App. 4 Cir. 1991). In *Temple*, tenants were sleeping in their residence when they were overcome by carbon monoxide fumes which leaked from a bathroom furnace. The landlord had an insurance policy which contained a "pollution exclusion" clause that was similar to the one present in the Plaintiffs' policy. *See Temple*, 580 So. 2d at 1134. The court found that such an exclusion did not apply to the facts before it, as such clauses applied to intentional pollution, not accidental discharges of carbon monoxide within

---

[1] However, the *Board of Regents* court ruled that a separate clause in another insurance policy did exclude such damages from coverage. The clause that was upheld excluded damages for pollution or contamination of "land, water, air, or real or personal property ... ." *Board of Regents*, 517 N.W.2d at 893. The court found that the term "air" did include the air within a building, even though the term "atmosphere" did not. *Id.* at 893.

a home. *Id.* at 1135. The court based its decision on Louisiana law which mandated that "when there is any doubt about the meaning of an agreement, the court must ascertain the common intention of the parties, rather than adhering to the literal sense of the terms." *Id.* at 1135. This standard is not unlike the standard applied by Virginia courts, as neither test will look beyond the face of the document until a doubt or ambiguity is found in the terms contained in the document.

There are other cases which have found the "pollution hazard" exclusion clauses ambiguous, but not because of a specific ambiguity in a term, but rather because those cases found that the clauses generally refer to environmental pollution. *See e.g., Molton, Allen & Williams, Inc. v. St. Paul Fire and Marine Ins. Co.,* 347 So. 2d 95, 99 (Ala. 1977) (finding clause ambiguous because "intent of the 'pollution exclusion' clause was to eliminate coverage for damages arising out of pollution ... by industry-related activities"); *Minerva Enterprises v. Bituminous Casualty,* 851 S.W.2d 403, 403-404 (Ark. 1993) (finding "pollution hazard" exclusion clause ambiguous and did not apply to single back-up of septic tank in mobile harm park as such clauses cover persistent and continual pollution). *West American Ins. Co. v. Tufco Flooring East, Inc.,* 409 S.E.2d 692, 698 (N.C. App. 1991) (purpose of "pollution hazard" exclusion clause is to exclude coverage for discharges "into the environment"). To the extent that the "pollution hazard" exclusion could generally be construed to refer to environmental pollution, this too, creates an ambiguity in the policy.

Selective has cited cases that it contends support its position that the "pollution hazard" exclusion clause in its policy with the Plaintiffs excludes coverage of the deaths that resulted in the underlying cases. Generally, however, these cases can be distinguished from the cases which support the Plaintiffs' argument.

Selective makes reference to a line of cases relating to leaky "Zamboni machines."[2] In the first Zamboni case, *League of Minnesota Cities,* 446 N.W.2d 419 (1989), a number of people at an ice rink suffered lung injuries as a result of a toxic build-up of nitrogen dioxide caused by a leaky Zamboni machine. The owner of the ice rink brought an action against its insurer claiming that its insurance policy covered the injuries. *Id.* The insurance policy had a clause which excluded from coverage injuries resulting from a discharge of pollutants "at or from the premises you own, rent or occupy." *Id.* The court dismissed the issue of ambiguity and stated that the injuries clearly arose out

---

[2] A Zamboni machine is a machine that "resurface[s] the ice between periods of [a] hockey game." Selective's brief, p. 7.

of "the release of nitrogen dioxide into [the] arena," and thus the injuries were excluded from coverage by the insurance policy. *Id.* at 422. The court did not confront the issue of ambiguity in the term "atmosphere."

Selective also refers to the case of *Essex Ins. Co. v. Tri-Town Corp.*, 863 F. Supp. 38 (D. Mass. 1994), decided by a Federal District Court interpreting Massachusetts law. In *Essex*, several individuals were injured at a hockey game because of carbon monoxide emissions from a leaky Zamboni machine. The insurer brought a declaratory judgment action seeking to construe an insurance policy it had with the insured. *Id.* at 38-39. The policy did not cover injuries arising out of the discharge of pollutants "into or upon the land, the atmosphere, or any water course." *Id.* at 39. The court spent little time analyzing whether there was any ambiguity in the term atmosphere. It simply stated in a conclusory fashion that "once the carbon monoxide was released into the atmosphere causing injuries, the incident fell within the scope of the ... exclusion." *Id.* at 40-41. The court also relied on *League of Minnesota Cities* in deciding that the insurer was not liable under the policy. *Id.* at 40.

The Zamboni machine cases cited by Selective are distinguishable from the policy and issues in the instant case. The insurance policy in *League of Minnesota Cities* is different from the Plaintiffs' insurance policy. In *League of Minnesota Cities*, the policy excluded from coverage injuries arising out of the discharge of pollutants "at or from the premises you own, rent or occupy." 446 N.W.2d at 420. The Minnesota Court of Appeals did not have to deal with the ambiguity inherent in the term "atmosphere." The Minnesota Supreme Court eventually did have a chance to deal with the term "atmosphere" in a "pollution hazard" exclusion clause similar to the clause at issue here. *See Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 888 (Minn. 1994). The Minnesota Supreme Court ruled in that case that the term "atmosphere" in the "pollution hazard" exclusion clause did "not exclude coverage under the primary policies for the contamination or pollution of air within a building". *Id.* at 892.

The *Essex Ins. Co.* case is also distinguishable from the policy and issue in the instant case. The *Essex* decision was based in part on the *League of Minnesota Cities* case above referred to and the "pollution hazard" exclusion clause in the latter case was much less ambiguous than the clauses in either *Essex* or the case at bar. Further, *Essex* is an opinion from a Federal District Court sitting in Massachusetts and interpreting Massachusetts law. There is a decision from the Supreme Judicial Court of Massachusetts which appears to be more relevant to the facts in this case. In *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992), the Massachusetts court found that a "pollution hazard" exclusion clause similar to the one in the Plaintiffs'

policy excluded "coverage for injury caused by certain forms of industrial pollution, but not coverage for injury caused by the presence of leaded materials in a private residence."

Selective also relies on the case of *Bernhardt v. Hartford Fire Ins. Co.*, 648 A.2d 1047 (Md. App. 1994). In *Bernhardt*, tenants in a building were overcome by carbon monoxide fumes which had accumulated in the apartment because of debris blocking the air passage of a chimney connected to a boiler. The landlord brought an action for declaratory relief against his insurer, claiming that his insurer had to provide a defense and indemnify him against the tenants' claims. *Id.* at 1048. The court found that a "pollution hazard" exclusion clause in the policy was not ambiguous and that the insurer owed no duty to indemnify the landlord. *Id.* at 1050-51.

However, the *Bernhardt* case is distinguishable from the instant case. The policy in *Bernhardt* is substantially different from the policy at issue here. The exclusion in *Bernhardt* applied to pollution discharges "at or from premises owned, rented or occupied by the name insured." *Id.* at 1048. In contrast, the exclusion in Plaintiffs' policy applies to discharges "into or upon the land, atmosphere, or ... body of water." It is more logical to read the *Bernhardt* exclusion to apply to specific discharges (such as carbon monoxide emissions) on specific property as the policy by its terms applies to discharges on specific property. However, the language in the Plaintiffs' policy is more general and uses more ambiguous terms such as "atmosphere."

The Court concludes that the "pollution hazard" exclusion clause in the Plaintiffs' insurance policy with Selective is ambiguous and should be construed against Selective and denied effect. Accordingly, the Court finds for the Plaintiffs in the Motion for Declaratory Judgment filed herein by the Plaintiffs and Selective is obligated to defend Plaintiffs against the allegations of the underlying lawsuits and to indemnify Plaintiffs for any judgment entered against them in any of the underlying lawsuits, subject to policy limits. The Court finds for the Plaintiffs, Dale W. Marshall and Susan Marshall, in the Counterclaim Motion for Declaratory Judgment filed by Selective.