[Civ. No. 7450. First Appellate District, Division Two.—September 8, 1931.]

EMMA L. HERRON, Respondent, v. SMITH BROS., INC. (a Corporation), Appellant.

Hartley F. Peart, Raymond Salisbury and Tinning & DeLap for Appellant.

Forrest M. Pearce, L. R. Weinmann, W. E. Licking and Mortimer B. Veale for Respondent.

NOURSE, P. J.—Plaintiff sued for damages for the death of her son, who was drowned while employed in the construction of a tunnel for the East Bay Municipal Utility District. The demurrer of the district was sustained and the cause went to trial before a jury, which returned a verdict against the defendant Smith Bros., Inc., for $7,500. This defendant has appealed under section 953a of the Code of Civil Procedure.

Working under a contract with the utility district, Smith Bros. was engaged in constructing a tunnel under the Contra Costa County hills as a part of the district's aqueduct system. This tunnel, known as the Lafayette tunnel, ran from the town of Lafayette in a westerly direction to the easterly bank of San Pablo Creek. At the same time the firm of Grier & Mead was engaged under similar contract on the construction of another tunnel, which ran from the Claremont district in the city of Oakland in an easterly direction to a point a short distance west of the westerly bank of San Pablo Creek. To connect the two tunnels for the general purposes of the water system a concrete diversion or screening chamber was under construction by Smith Bros. under a separate contract. This chamber was

located west of the westerly bank of San Pablo Creek at an elevation of several feet below the bed of the creek and was planned to connect with the Lafayette tunnel by a concrete tube which this defendant constructed across the creek and below the stream bed. About two weeks before the accident Grier & Mead drove a four-foot tunnel from the easterly end of the Claremont tunnel into the excavation made by Smith Bros. for the diversion chamber and used this four-foot tunnel to pump water from the seat of their operations into the diversion chamber until this practice was discontinued by order of the utility district.

In the construction of the diversion chamber and of the connecting tunnel under the stream bed the defendant broke through both of the natural banks of the stream to a level far below that of the stream bed. Protection was afforded those working in the Lafayette tunnel by the erection of a dam consisting of sacks filled with earth. On November 25, 1926, a heavy rainstorm caused a sudden flood of water to flow down San Pablo Creek; the water quickly washed out the earth dam on the east bank, overflowed the excavation and works of the diversion chamber, and escaping into the Claremont tunnel drowned ten men employed upon that contract.

On this appeal but two points are raised—that the negligence of the appellant was not the proximate cause of the death, and that the damages are excessive. The argument on the question of proximate cause is predicated on the claim that Grier & Mead were trespassers who negligently constructed an opening between the Claremont tunnel and the diversion chamber and that their negligence was the direct and proximate cause of the injuries. The respondents rest their case upon the admitted negligence of the appellants in substituting an insecure and unstable dike or cofferdam for the natural bank of the stream, and in permitting the easterly portal of its conduit under the bed of the stream to remain open and exposed immediately below this insecure dam; upon the further showing that all these acts were done by appellant with full knowledge of the opening into the Claremont tunnel, of the probability of flood waters in the stream, of the incompleted condition of the diversion chamber, and of the uninterrupted passage for the flow of

flood waters from the stream into the Claremont tunnel; and that these conditions were allowed to remain notwithstanding repeated warnings of the danger given to appellant.

Proximate cause has been defined as: "That act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted; . . . the dominant cause, not the one which is incidental to that cause, its mere instrument." (22 R. C. L., p. 111.) This definition has been approved in a long line of decisions, but it would serve no purpose to cite them here. In *Sawdey* v. *Rasmussen et al.*, 107 Cal. App. 467 [290 Pac. 864, 869], the District Court say: "The mere fact that one of several concurring causes may not have been reasonably anticipated is not enough to shield from liability him who sets in motion the other; for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is the proximate concurring cause; that is, one that was so efficient in causation that, but for it, the injury would not have occurred." In *Rauch* v. *Southern Cal. Gas Co.*, 96 Cal. App. 250, 255 [273 Pac. 111, 113], the District Court quoted with approval from Thompson's Commentaries on the Law of Negligence, volume 8, page 21, as follows: "One of the most valuable tests to apply to determine this question is to determine whether a responsible human agency has intervened sufficient of itself to stand as the cause." And again (p. 20): "An intervening agency which merely concurs with the cause counted on as a proximate cause does not prevent the latter from becoming the proximate cause for the purposes of the action."

Applying these principles to the case at hand we cannot escape the conclusion that, conceding the negligence of Grier & Mead in leaving the adit to the Claremont tunnel unprotected, such negligence was not "sufficient of itself to stand as the cause" of the injuries, but the negligence of the appellant in the particulars stated was a "proximate concurring cause" and that these acts of negligence were so continuous in their nature that the concurrent wrongful act of Grier & Mead precipitating the disaster must be regarded

as not independent, but as conjoining with the original act to create the disastrous result. (*Merrill* v. *Los Angeles G. & E. Co.,* 158 Cal. 499, 505 [39 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534] ; *Rauch* v. *Southern Cal. Gas Co.,* *supra.*)

 On the issue of the amount of the verdict the argument is that the verdict of $7,500 is excessive because the highest estimate of the yearly contributions of the deceased for the support of his mother was $300; that her life expectancy according to mortality tables was twenty and one-half years; that, assuming that she should live for this full period the total contributions would equal $6,180. Then it is said that, because of the roving character of the son's employment, there was no reasonable probability that the mother would suffer from the loss of his society, comfort or protection. The mother was forty-nine years of age at the time of her son's death; the son was twenty-three. He was able-bodied, thrifty and sober, and had been engaged as a laborer in heavy construction jobs at daily wages from which he had contributed to his mother an average of $25 a month. Appellant cites *Parsons* v. *Easton,* 184 Cal. 764, 773 [195 Pac. 419, 422], holding that because the evidence there failed to show "a reasonable probability" that the plaintiff suffered pecuniary loss through the deprivation of the "society, comfort, and protection" of the deceased, "no great sum could reasonably be given as damages" on that account. The case is not authority here for two reasons— the appellant has failed to print any of the evidence on the issue and we cannot therefore presume against the verdict that such reasonable probability was not shown; for the same reason we cannot presume that any portion of the verdict covered loss of society, comfort or protection, but we may fairly and reasonably presume in support of the verdict that the jury allowed the full sum of $7,500 as anticipated pecuniary benefits. If this were done the verdict would not do violence to any rule of law to which we have been cited. The jury was not bound by the exact estimates of the mortality tables or by the estimates of past income of this twenty-three year old son. It could take into consideration the expectancy that, as the age of the son increased, he might accumulate a greater income and thus increase his

contributions to the support of his mother. (*Griffey* v. *Pacific Elec. Ry. Co.*, 58 Cal. App. 509, 517 [209 Pac. 45].) The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 8, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 2, 1931.