Quentin R. SCHROEDER and Frances M. Schroeder, dba Chickies Hallmark Shoppe, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, and Does I–X, Defendants.

No. CV–N–90–570–ECR.

United States District Court, D. Nevada.

July 9, 1991.

Steve L. Dobrescu, Ely, Nev., for plaintiffs.

Benson, Haefner & Enzenberger, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

In May, 1990, plaintiffs discovered damage to their building. At the time, they were insured by defendant under an "all-risk" type of policy. Pursuant to this policy, plaintiffs are covered for every loss except those specifically excluded. After defendants denied coverage on the claim, plaintiff filed a complaint (document # 1A) in Nevada state court, which was subsequently removed to this court (document # 1) on the basis of diversity. Plaintiffs allege that defendant breached the insurance policy by denying coverage. Further, plaintiffs assert, defendant acted in bad faith in investigating the claim and refusing coverage.

In this order, we address only the facts relevant to plaintiffs' first cause of action. The facts surrounding defendant's investigation of the claim are not relevant to the pending motions because we are not addressing plaintiffs' bad faith claim. On February 8, 1991, we entered an order (document # 11) bifurcating the insurance coverage claim from the bad faith claim, and staying discovery on the bad faith claim.

Both sides are in agreement as to the facts. Plaintiffs own a Hallmark shop in Ely, Nevada. Sometime before May 26, 1990, a city water service pipe, running underground to plaintiffs' shop, ruptured due to old age, rust and corrosion. As a result, water escaped from the pipe, saturating the soil beneath plaintiffs' building. The water caused the cementing agent in the soil to dissolve and collapse under load. The soil settled downward, causing the building to shift, resulting in damage to plaintiffs' building. At no time did water enter plaintiffs' building and cause damage.

On May 3, 1991, defendant filed a motion (document # 16) for summary judgment as to plaintiffs' first cause of action, breach of the insurance policy. On May 21, 1991, plaintiffs filed (document # 17) an opposition to defendant's motion and cross motion for summary judgment. On June 3, 1991, defendant filed (document # 19) a reply to plaintiffs' opposition and opposition to plaintiffs' cross motion for summary judgment. On June 17, 1991, plaintiffs filed a reply (document # 21) to their cross motion for summary judgment.

In a minute order dated July 1, 1991, we denied plaintiffs' motion for certification to the Nevada Supreme Court of whether Nevada recognizes the doctrine of "efficient proximate cause." Consequently, the parties' motions for summary judgment are ripe for adjudication.

■ Since the parties agree on the facts, we must decide, given the facts, whether the insurance policy contains a provision or provisions excluding coverage on plaintiffs' loss. If the policy contains such an exclusion or exclusions, defendant is entitled to summary judgment. If the policy does not contain an exclusion covering plaintiffs' loss, plaintiffs are entitled to summary judgment.

Section I, page 6, "Losses Not Insured," provides in relevant part:

We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

b. earth movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. **Earth movement includes but is not limited to earthquake, landslide, erosion, and subsidence but does not include sinkhole collapse** (emphasis added).

Defendant asserts that this provision excludes plaintiffs' loss from coverage. Under the language of the provision, defendant appears correct. In this case, plaintiffs would not have sustained damage had the soil beneath their building not collapsed. While the soil would not have collapsed had the pipe not ruptured, causing water to escape and saturate the soil, the language underlined above indicates that so long as earth movement was involved, coverage is denied.

Plaintiff asserts that water damage, not earth movement, caused the damage to the building. Further, an argument exists that earth movement relates to natural causes only. Even if water damage "caused"

plaintiffs' loss, which we will discuss below, the collapse of the soil was at least a cause acting "concurrently or in any sequence" with the "water damage." Thus, coverage would not lie.

■ Whether earth movement may include soil collapse resulting from a non-natural cause poses a more difficult question. In *Village Inn Apartments v. State Farm Fire and Casualty Insurance Co.*, 790 P.2d 581 (Utah Ct.App.1990), a Utah court of appeals faced the same issue. In *Village Inn*, an underground pipe ruptured, causing water to saturate the soil beneath plaintiffs' apartment building, in turn causing damage to the building. Plaintiffs asserted that earth movement referred only to natural phenomena and did not include the effects of a ruptured pipe.

The court rejected this argument because of the language underlined above and the language reading "all whether combined with water or not." That is, the policy in *Village Inn* contained the same language here. The court found that since earth movement included a situation where water was involved and where such movement could be caused by another event, "earth movement" had to include both natural and non-natural processes. *Id.* at 583.

We find this analysis persuasive. If one event, here the rupturing of a water pipe, can cause soil to collapse, such a chain of events includes earth movement. Especially since earth movement is defined to include the subsidence of soil, no matter how caused, earth movement can include non-natural events. Since subsidence is the sinking, falling, or lowering of something, earth movement clearly was involved here.

In *Village Inn*, plaintiffs also argued that "earth movement" was ambiguous, and should be construed against the insurer. The court rejected that argument. In *Village Inn*, the insurance policy did not contain the language bolded above, further defining earth movement. Since subsidence clearly occurred in our case, earth movement happened. Consequently, the language in the policy defining and explaining earth movement is not ambiguous.

*Millar v. State Farm Fire and Casualty Insurance Co.*, 167 Ariz. 93, 804 P.2d 822 (Ct.App.1990), involved facts identical to those before us. Further, the policy in *Millar* contained the identical language set out above. In concluding that earth movement includes non-natural phenomena, the court relied on *Village Inn* and also relied on the broadness of the definition of "earth movement." Finally, the court concluded that the definition of earth movement in the policy was exactly what occurred in the case. This is also true of our case. We conclude, therefore, that the ruptured pipe and saturated soil caused earth movement below plaintiffs' property.

■ Plaintiffs argue that the "efficient proximate cause" doctrine allows them to recover in this case. That doctrine, developed in California, provides that when a loss is sustained by a sequence or concurrence of at least two causes, one covered under the policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed. Thus, if the "first" cause is covered, the loss is covered even if an uncovered loss is involved in the chain of events.

Nevada has not ruled on whether it recognizes the "efficient proximate cause" doctrine. Ordinarily, we would have to decide whether the state would be likely to recognize the doctrine. In this case, however, we need not make such a determination because we conclude that even if the doctrine exists in Nevada, the parties have contracted out of the doctrine.

For purposes of argument, we assume that Nevada recognizes the doctrine and that a covered loss was the efficient proximate cause of plaintiffs' damage. Nonetheless, the language underlined above nullifies the efficient proximate cause doctrine in this case. The doctrine basically states that when more than one cause is involved in a loss, if the cause setting the chain of events in motion was a covered cause, the loss is covered.

The language underlined above, however, states exactly the opposite of the doctrine. That language basically states that when more than one cause is involved in a loss, regardless of the sequence of the causes, if at least one cause is excluded, the loss is not covered. Consequently, if contracting out of the doctrine does not violate public policy, the efficient proximate cause doctrine does not save plaintiffs.

■ In this case, we conclude that the parties could, as they did, contract out of the efficient proximate cause doctrine without violating public policy. In *Millar, supra,* the court held that identical language enabled the insurer to avoid the efficient proximate cause doctrine. The court concluded further that the parties could contract out of the doctrine. The court recognized, as do plaintiffs here, that two other state courts, Washington and California, had held that the parties could not contract out of the doctrine. In the Washington case, however, the state had adopted the doctrine before the parties entered the contract and the exclusion would unlawfully allow the insurer to avoid the rule.

We are persuaded by the *Millar* case. First, we can see no public policy reason for disallowing parties to contract out of this particular doctrine. Further, and more important, we are not even sure that the doctrine exists in Nevada. Thus, there is certainly no legislative statement that insurers should not be able to include language in insurance policies similar to the language underlined above. Consequently, we conclude that the parties could contract out of the efficient proximate cause doctrine, and that they did contract out of the doctrine.

■ Plaintiffs assert that other provisions in the policy specifically provide for coverage in this case because they are not subject to other exclusions in the policy. Provision 2d, page 8 of the policy, provides:

> We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following: smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself. But if accidental direct physical loss by any of the "Specified Causes of

Loss" or by building glass breakage results, we will pay for that resulting loss. The specified cause of loss plaintiffs assert entitles them to recover under this provision, water damage, is defined at Page 1, Definitions, number 14:

accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

Implicit in plaintiffs' argument is that their building sustained water damage. We do not agree with plaintiffs that they sustained water damage. No water entered plaintiffs' building. Plaintiffs did not suffer flooded property, and no part of plaintiffs' building was damaged directly by water. Rather, water caused soil subsidence, which in turn caused plaintiffs' building to shift, causing damage to the building. Consequently, plaintiffs cannot take advantage of provision 2d. For the same reasons, plaintiffs cannot take advantage of provision 2f. Soil subsidence, not water damage, caused plaintiffs' building to settle.

■ Plaintiffs also argue that the notice they received highlighting certain provisions of their policy gave them reasonable expectations that defendant would cover an accident such as occurred here. The notice, however, also stated that plaintiffs must read the entire policy, especially the losses not insured section, and that earth movement is not a covered loss. In *Millar, supra,* the plaintiffs made a similar notice argument. The court noted that insureds have reasonable expectations that every loss will be covered. *Id.* 804 P.2d at 826. Since the policy explained covered and uncovered losses, the plaintiffs knew or should have known that they had to read the policy to determine what losses were not covered. *Id.* In this case, the notice of changes gave plaintiffs ample notice that earth movement was not covered.

In light of our conclusion, we need not address defendant's arguments that other provisions in the policy would exclude coverage. We note finally that we must decide this case according to the terms of the insurance policy. While plaintiffs go uncompensated by defendant in this case,

such result is dictated by the policy. Of course, plaintiffs still may have recourse against a potential defendant responsible for the ruptured pipe.

IT IS, THEREFORE, HEREBY ORDERED that defendant's motion (document # 16) for summary judgment as to plaintiffs' first claim for relief is GRANTED. Plaintiffs' cross-motion (document # 17) for summary judgment as to plaintiffs' first claim for relief is DENIED.

IT IS FURTHER ORDERED that our disposition of plaintiffs' first claim for relief renders plaintiffs' second claim for relief moot. Since defendant properly denied coverage, they are entitled to judgment on the bad faith claim as a matter of law. The clerk, therefore, shall enter judgment in favor of defendant and against plaintiffs.