Daniel V. COX, Appellant,

v.

**PROGRESSIVE CASUALTY
INSURANCE COMPANY,**
Appellee.

No. S–5372.

Supreme Court of Alaska.

March 4, 1994.

Wm. Grant Callow, Law Offices of Wm. Grant Callow, P.C., Anchorage, and Patrick G. Ross, Law Office of Patrick G. Ross, Anchorage, for appellant.

Robert L. Griffin, Mason & Griffin, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

### INTRODUCTION

This case arises out of a motorcycle accident that occurred in July 1989. The issue presented before this Court concerns the interpretation of the phrase "immediate medical treatment" in a motorcycle liability insurance policy. The insurer argues that "immediate medical treatment" means only "first aid type treatment immediately in time." The accident victim, a third-party beneficiary, interprets the phrase to cover "all the

expenses incurred for medical treatment required by others who the insured injures while operating his motorcycle." The superior court agreed with the insurer. We now reverse and remand with instructions.

## FACTS AND PROCEEDINGS

In July 1989, while driving a motorcycle in Anchorage, Daniel Cox was struck by another motorcyclist, Joe Egemo. Cox sustained numerous injuries, including a closed head injury, as well as fractures of the left leg, the left elbow, and a rib. He was transported from the scene of the accident to the hospital, where he underwent surgery the same day for external fixation of the left leg fracture. Four days later, he underwent a second surgery on the leg utilizing a bone graft from his iliac crest. Twelve days later, Cox underwent surgery a third time to remove and replace one of the external fixation pins. He was discharged from the hospital eighteen days after the accident.

In October 1989, Cox was rehospitalized for removal of the external fixation device and for casting of the left leg. Physical therapy and numerous outpatient visits followed. In September 1990, Cox was again hospitalized for additional internal fixation and an additional iliac graft. His final hospitalization from the accident occurred in March 1991, when he was admitted for repair of a pseudarthrosis and for more internal fixation. Cox incurred medical bills in excess of $100,000 as a result of the accident.

At the time of the accident, Egemo was insured by Progressive Insurance Company. Egemo's policy provided liability coverage for bodily injury in the amount of $50,000 per person and $100,000 per occurrence. Progressive paid Cox $50,000 for his personal injuries and settled Cox's claim for damage to his motorcycle. Egemo's policy further provided:

In addition to our limit of liability, we will pay on behalf of a covered person:

.     .     .     .     .

5. Expenses incurred for immediate medical treatment required by others you injure with your cycle except for passengers on your cycle.

(Emphasis omitted).

Cox moved for a declaratory judgment, asking the superior court to resolve the meaning of "immediate medical treatment." Following discovery, Cox and Progressive filed cross-motions for summary judgment on this issue. The superior court ruled

that the language in [Progressive's] policy of insurance obliging [Progressive] to pay "immediate medical care" [sic] obligates [Progressive] to pay any first-aid expenses incurred by [Cox] up to but excluding [Cox's] admission into Humana Hospital on July 9, 1989.

Cox now appeals.

## DISCUSSION

Cox argues that the policy provides coverage for all treatment he required as a result of his injuries. Progressive responds by arguing that the superior court was correct in holding that "immediate medical treatment" in its policy was limited to the first aid care administered to Cox prior to his admission into the hospital. We conclude that both of these interpretations are erroneous.[1] Instead, we hold that the language found in this policy provides coverage for all medical care up until that point where treatment becomes recuperative or rehabilitative in nature. See 8A John A. Appleman, *Insurance Law and Practice* § 4901, at 222 (1981) ("In determining what is immediate surgical relief, it has been held that the chain of causation is broken when such relief begins to partake of the character of recuperative medical treatment. . . .").

This interpretation of the policy language is consistent with case law from other jurisdictions construing comparable provisions. For example, in *Alsam Holding Co. v. Consolidated Taxpayers' Mutual Insurance Co.,*

---

1. The interpretation of contract language is a question of law, subject to *de novo* review by this Court. *Jackson v. Barbero,* 776 P.2d 786, 788 (Alaska 1989); *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987). This Court interprets insurance contracts by looking to the lan-

guage of the disputed policy provisions, the language of other provisions of the policy, and to relevant extrinsic evidence. *Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 66 (Alaska 1977). In addition, we also refer to case law interpreting similar provisions. *Id.*

167 Misc. 732, 4 N.Y.S.2d 498, 510–13 (Mun. Ct.1938), the New York Municipal Court interpreted a similar clause in a landlord's liability policy. The clause prohibited an insured from incurring any expense other than for "immediate surgical relief" except at the insured's own cost. In *Alsam Holding*, an elderly tenant tripped and fell, breaking his femur. *Id.* 4 N.Y.S.2d at 503. The insured landlord assisted the man to his bed, where he remained overnight. *Id.* The next day, a doctor examined him and found him to be in shock. *Id.* He was given bedside X-rays, then removed to a hospital. *Id.* In the hospital, he was placed in traction for four days before the doctors were able to operate. *Id.* After the operation, he remained in the hospital for treatment for more than two months. *Id.* 4 N.Y.S.2d at 504.

The court held that the "immediate surgical relief" clause authorized the insured to compensate an accident victim for all of the medical expenses incurred until the relief "beg[an] to partake of recuperative medical treatment." *Id.* 4 N.Y.S.2d at 512. Thus, the court concluded that the insurer was obligated to pay for all of the medical costs incurred until the patient was able to move about on crutches, one month after his operation. *Id.*

In *Laidlaw v. Hartford Accident & Indemnity Co.*, 254 N.Y. 391, 173 N.E. 557 (1930), the New York Court of Appeals followed a similar approach. In *Laidlaw*, the insured struck a four and one-half year old boy with his automobile. *Id.* 173 N.E. at 558. The insured was without fault in the accident. *Id.* By the terms of the policy the insurer agreed "to pay for such immediate medical or surgical aid as was imperative at the time of the accident." *Id.*

The court held that under this clause, the insurer was obligated to pay for the victim's skull operation the day after the accident and for his two week hospital stay. *Id.* 173 N.E. at 559. The court concluded, however, that the clause did not require the insurer to cover expenses incurred for nursing the child after he left the hospital. *Id.*

Other jurisdictions have reached similar conclusions. *See generally* 8A John A. Appleman, *Insurance Law and Practice* § 4901 (1981), and cases cited therein. For example, in *Employers' Liability Assurance Corp. v. Manget Bros.*, 45 Ga.App. 721, 165 S.E. 770 (1932), an automobile policy authorized the insured to provide "such immediate medical or surgical relief as may be imperative at the time any such injuries are sustained." *Id.* 165 S.E. at 772. The Georgia Court of Appeals concluded that this language covered hospitalization and nursing expenses for the few days the accident victim remained in the hospital prior to his death. *Id.*

Likewise, in *Employers' Liability Assurance Corp. v. Light, Heat & Power Co.*, 28 Ind.App. 437, 63 N.E. 54 (1902), the policy at issue authorized the insured employer to render "immediate medical assistance" at the insurer's expense. *Id.* 63 N.E. at 55–56. The court interpreted this provision to require the insurer to pay "for necessary medical attention rendered within a reasonable time after the accident, and not for any subsequent services." *Id.* The court held that coverage extended to five weeks of two to four doctor's visits per day, "continuous" service for the next three weeks, and periodic visits thereafter. *Id.*

As stated above, we conclude that the disputed provision at issue here covers all medical care up until that point where treatment becomes recuperative or rehabilitative in nature. We recognize, however, that the terms "recuperative" and "rehabilitative" are not self-defining. The extent of coverage under such a provision is necessarily dependent on the particular circumstances of any given case. Whether medical care is recuperative or rehabilitative in nature and thus outside the scope of coverage is a fact-based inquiry; a strict bright-line test is therefore inappropriate. *See, e.g., Laidlaw*, 173 N.E. at 559 ("[The] intent and scope [of the clause] must depend on the nature and circumstances of the accident, in the absence of more definite terminology.").

Nonetheless, we do offer the following general guidelines to assist the trial courts in construing the phrase "immediate medical treatment." We are satisfied that this language clearly contemplates on-site first aid treatment and emergency room-type

care. We also find that a policy such as the one at issue here generally will cover any medical treatment, directly attributable to the insured event and without any intervening cause, reasonably believed necessary to prevent loss of life, serious impairment to body functions, serious or permanent dysfunction of any body part or organ, or any other serious medical consequence.

*CONCLUSION*

In the present case, the determination of when Cox's treatment turned from "immediate medical treatment" to recuperative or rehabilitative medical treatment is a question of fact, properly left to the superior court. We reverse the superior court's determination that this policy language limits coverage to first aid care administered prior to hospital admission and remand to the superior court for proceedings consistent with the standard set forth in this opinion.

REVERSED AND REMANDED.

BURKE, J., not participating.