**STATE FARM FIRE AND CASUALTY COMPANY, Petitioner,**

v.

**Jerome E. BONGEN and Elizabeth A. Bongen; Kodiak Electric Assoc.; and City of Kodiak, Respondents.**

No. S–6526.

Supreme Court of Alaska.

Nov. 8, 1996.

Ronald L. Bliss, Bliss & Wilkens, Anchorage, and Susan M. Popik, Chapman, Popik & White, San Francisco, CA, for Petitioner.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Respondents.

Jerome E. Bongen and Elizabeth A. Bongen. Michael S. Rogers, Reed McClure, Seattle, WA, and Thomas A. Matthews, Matthews & Zahare, Anchorage, for amici curiae

United Services Automobile Association, Government Employees Insurance Company, and Allstate Insurance Company.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

A home owned by Jerome Bongen and Elizabeth Bongen was destroyed by a mudslide. After their insurer denied coverage, the Bongens sued. They alleged that the mudslide was caused by construction activity carried out above their property. On cross-motions for partial summary judgment, the superior court held that a provision in the Bongens' insurance policy excluding from coverage any loss resulting from earth movement, regardless of the cause, was unenforceable. We reverse.

### II. FACTS AND PROCEEDINGS

Jerome Bongen and Elizabeth Bongen owned a home on Pillar Mountain in Kodiak. In the late 1980's, Kodiak Electric Association (KEA) clear-cut a right-of-way above the home to install transmission lines on City of Kodiak property. On October 31, 1991, following heavy rains, a mudslide destroyed the Bongen home. According to the Bongens' expert, the KEA transmission line project "contributed to or caused damage" to the Bongen home.

The Bongens filed a claim with their insurer, State Farm Fire and Casualty Company (State Farm). Their policy contained the following exclusion:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .
>
> **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow . . . .

State Farm denied coverage based on this exclusion.

The Bongens thereafter commenced this action against State Farm, KEA, and the City of Kodiak. State Farm moved for partial summary judgment on the ground that the Bongens' policy excluded coverage for mudslides. The Bongens filed a cross-motion for partial summary judgment, which the superior court granted. The superior court held that the "efficient proximate cause" rule [1] applies to multiple causation

---

1. Some courts define the efficient proximate cause as the first, or precipitating cause in a multiple causation case:

 [W]hen a loss is sustained by a sequence or concurrence of at least two causes, one covered under [an insurance] policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed. Thus, if the "first" cause is covered, the loss is covered even if an uncovered loss is involved in the chain of events.

 *Schroeder v. State Farm Fire and Cas. Co.*, 770 F.Supp. 558, 561 (D.Nev.1991). Other courts have defined efficient proximate cause to mean the predominant cause, rather than the cause

which is first in time. We have not yet considered the rule in reference to homeowners' policies, and we express no opinion as to whether it applies in the absence of policy language to the contrary.

The superior court partially based its decision to adopt the "efficient proximate cause" rule on this court's decision in *Bering Strait School District v. RLI Insurance Co.*, 873 P.2d 1292 (Alaska 1994). However, the efficient proximate cause rule was not specifically litigated in that case, and we did not rule on the issue. It is true that we quoted language from a Washington State case that referred to the rule. *See Id.* at 1297 (quoting *Starczewski v. Unigard Ins. Group*, 61 Wash.App. 267, 810 P.2d 58, 62 (1991)). However, *Starczewski* was one of three cases cited to

insurance cases in Alaska, and that public policy prohibits an insurance company from circumventing the rule through contractual language. We granted State Farm's petition for review of this decision.

## III. *DISCUSSION*

### A. *Standard of Review*

■ The interpretation of contract language is a question of law, subject to *de novo* review. *Cox v. Progressive Cas. Ins. Co.,* 869 P.2d 467, 468 n. 1 (Alaska 1994) (citations omitted). "This Court interprets insurance contracts by looking to the language of the disputed policy provisions, the language of other provisions of the policy, and to relevant extrinsic evidence. In addition, we also refer to case law interpreting similar provisions." *Id.*

### B. *The Earth Movement Exclusion is Enforceable.*

■ The Bongens argue that, under the efficient proximate cause rule, the loss of their house is covered under the insurance policy. They claim that "the negligence of [KEA] and the City of Kodiak in undermining the soils above the homes" is a "covered event."

The Bongens' policy excluded from coverage any loss resulting from earth movement, regardless of the cause of the earth movement, and regardless of whether a non-excluded risk acted "concurrently or in any sequence with" earth movement. The superior court found that "both parties apparently agree that the policy terms as written exclude coverage in the present case." [2] In holding that the earth movement exclusion was unenforceable, the superior court relied primarily on *Safeco Insurance Co. v. Hirschmann,* 112 Wash.2d 621, 773 P.2d 413 (1989).

In *Hirschmann,* the Supreme Court of Washington held that an insurer is obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril, regardless of a policy exclusion stating the contrary. *Id.,* 773 P.2d at 416–17. The court criticized the insurer's attempt to circumvent the efficient proximate cause rule, *id.* at 414, but did not fully explain why such a practice is prohibited. Instead, *Hirschmann* relied on an earlier Washington case, *Villella v. Public Employees Mutual Insurance Co.,* 106 Wash.2d 806, 725 P.2d 957 (1986), which, in turn, relied on California cases holding that insurers could not circumvent the efficient proximate cause rule. *Villella,* 725 P.2d at 962–64. In California, insurers are statutorily required to provide coverage if the efficient proximate cause is an insured risk.[3] *See* Cal. Ins.Code §§ 530, 532; *Howell v. State Farm Fire & Cas. Co.,* 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 712 (1990). Neither *Hirschmann* nor *Villella* notes the unique statutory provision behind the California cases.[4]

Most courts addressing the validity of exclusionary language actually or functionally identical to that found in the Bongens' policy have held that the exclusion is enforceable. In *Alf v. State Farm Fire & Casualty Co.,* 850 P.2d 1272 (Utah 1993), for example, the main waterline into the insureds' home ruptured, causing extensive flooding and erosion. *Id.* at 1273. The insureds argued that the earth movement exclusion—identical to the exclusion in the present case—should not apply because the efficient proximate cause of the damage was the burst waterline, a covered risk. The court rejected their argument, holding that under the exclusion, "coverage for damage resulting from earth movement [is excluded], despite the fact that the cause of the earth movement is a covered peril." *Id.* at 1275. The court concluded

---

support a point of law that is not predicated on the efficient proximate cause rule. Therefore, we do not view *Bering Strait* as controlling precedent for the issue at hand.

2. Jerome Bongen testified that when he was shown the earth movement exclusion by a State Farm agent he understood it, and saw "in black and white" that "we wouldn't be covered."

3. Alaska has no equivalent statute.

4. For an analysis critical of *Hirschmann, see* Lawrence Alan Wans, Comment, *Washington's Judicial Invalidation of Unambiguous Exclusion Clauses in Multiple Causation Insurance Cases,* 67 Wash. L.Rev. 215, 231–32 (1992).

that "the proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it." *Id.* at 1277.

Other courts are in accord with this position. *See, e.g., Front Row Theatre, Inc. v. American Mfrs. Mut. Ins. Co.,* 18 F.3d 1343, 1347 (6th Cir.1994) ("When damage to an insured's property is caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy."); *Schroeder v. State Farm Fire & Cas. Co.,* 770 F.Supp. 558, 561 (D.Nev.1991) ("[T]he parties could, as they did, contract out of the efficient proximate cause doctrine without violating public policy."); *Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 804 P.2d 822, 826 (1990); *Kane v. Royal Ins. Co. of America,* 768 P.2d 678, 684 (Colo.1989) ("[T]he 'efficient moving cause' rule must yield to the language of the insurance policy in question."); *Ramirez v. American Family Mut. Ins. Co.,* 652 N.E.2d 511, 514–15 (Ind. App.1995); *Kula v. State Farm Fire & Cas. Co.,* 212 A.D.2d 16, 628 N.Y.S.2d 988, 991 (1995); *State Farm Fire & Cas. Co. v. Paulson,* 756 P.2d 764, 769 (Wyo.1988).

■ We favor the majority rule. It is well established that "[t]he obligations of insurers are generally determined by the terms of their policies." *Bering Strait Sch. Dist. v. RLI Ins. Co.,* 873 P.2d 1292, 1294 (Alaska 1994); *see also State v. Underwriters at Lloyds, London,* 755 P.2d 396, 400 (Alaska 1988) (quoting 6B J. Appleman, *Insurance Law and Practice* § 4254 (Buckley ed. 1979)) ("The intention of the parties as to the coverage of a policy is determined by the words which they have used."). We have held that where an insurer "limits the coverage of a policy issued by it in plain language, this court recognizes the restriction." *Insurance Co. of North America v. State Farm Mut. Auto. Ins. Co.,* 663 P.2d 953, 955 (Alaska 1983). We can discern no sound policy reason for preventing the enforcement of the earth movement exclusion to which the parties in this case agreed. We therefore align ourselves with those courts holding that an insurer may expressly preclude coverage when damage to an insured's property is caused by both a covered and an excluded

risk. The earth movement exclusion in the Bongens' policy is enforceable.

C. *The Earth Movement Exclusion Is Not Ambiguous.*

■ Since insurance policies are contracts of adhesion, ambiguities are interpreted in favor of the insured. *See Bering Strait Sch. Dist.,* 873 P.2d at 1295. The Bongens argue that the earth movement exclusion is ambiguous, and that a layperson would reasonably expect the exclusion to apply only to earth movement caused by "natural phenomena."

This same argument has been rejected by other courts construing insurance policy language substantially the same as that at issue here. In *Village Inn Apartments v. State Farm Fire & Casualty Co.,* 790 P.2d 581 (Utah App.1990), for example, an underground water pipe ruptured on the premises of an apartment complex, damaging the building's foundation. The insureds sought a declaratory judgment that the loss was covered by their insurance policy which, like the Bongens' policy, excluded from coverage losses resulting from earth movement "regardless of ... the cause of the excluded event." *Id.* at 582. The insureds argued that the exclusion did not apply because earth movement referred only to natural phenomena, and that the exclusion was ambiguous and should be construed in their favor. *Id.* at 583. The court held that the exclusion was unambiguous, and that the losses resulting from the broken water pipe were excluded under the earth movement provision:

> Since the exclusion is for earth movement loss from *any* cause, we can only conclude earth movement encompasses both natural and human processes.

*Id.* Other courts construing State Farm's earth movement exclusion have reached similar results. *See Rodin v. State Farm Fire & Cas. Co.,* 844 S.W.2d 537 (Mo.App.1992); *Schroeder,* 770 F.Supp. at 560–61; *Millar,* 804 P.2d at 824–25; *Kula,* 628 N.Y.S.2d at 990–991; *Alf,* 850 P.2d at 1275–76.

We are persuaded by the reasoning of these cases. The Bongens' policy contains

not only the "regardless of the cause" language found determinative in *Village Inn* and the other cited cases, but also a proviso excluding from coverage losses resulting from earth movement regardless of whether the earth movement arose "from natural or external forces." To accept the Bongens' argument in light of this clear language would be to create an ambiguity where none exists. *See Village Inn*, 790 P.2d at 583 ("A policy term is not ambiguous ... merely because one party assigns a different meaning to it in accordance with his or her own interests."). We hold that the earth movement exclusion in the Bongens' policy is not ambiguous, and that earth movement, as that term is used in the policy, encompasses both natural phenomena and human processes.

Only one other court has construed policy language *identical* to that at issue here. In *Cox v. State Farm Fire & Casualty Co.*, 217 Ga.App. 796, 459 S.E.2d 446 (1995), the Georgia Court of Appeals ruled that the language excluded only losses caused from natural disasters. *Id.*, 459 S.E.2d at 447–48. We decline to follow *Cox*. To explain why, it is necessary to first present some background information about the earth movement exclusion.

The precise language at issue in the Bongens' policy is a very recent addition to State Farm's standard homeowner's insurance policy. In the mid–1980's, many insurance companies added a "lead-in clause" to the "Loss-es not Insured" section of their policies.[5] The lead-in clause stated:

> We do not insure for loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss....

Fierce at n. 74 and accompanying text. Courts interpreting this language have held that, when read with the earth movement exclusion, the policy excludes coverage for losses caused by both natural and man-made earth movement.[6]

Until the insurance companies added the lead-in clause, courts often limited the earth movement exclusion to natural disasters, due to the doctrine of *ejusdem generis*.[7] *Ejusdem generis*, a doctrine which we have applied in previous cases, essentially states that a general term, when modified by specific terms, will be interpreted in light of those specific terms, absent a clear indication to the contrary.[8] Courts interpreting the lead-in clause have read it as providing a clear indication that the earth movement exclusion is not intended to be limited to losses caused by natural disasters.

State Farm has now added additional language to its lead-in clause, which is in the

5. Richard A. Fierce, *Insurance Law—Concurrent Causation: Examination of Alternative Approaches*, 1985 S. Ill. U. L.J. 527, n. 74 and accompanying text (1985); Brian Mattis, *Earth Movement Claims Under All Risk Insurance: The Rules Have Changed In California*, 31 Santa Clara L.Rev. 29, n. 39–41 and accompanying text (1990).

6. *See, e.g., Kula,* 628 N.Y.S.2d at 990–91; *Alf,* 850 P.2d at 1275–76; *Village Inn,* 790 P.2d at 583.

7. Several of the cases which the Bongens cite for their contention that the earth movement exclusion is ambiguous interpret policies which do not contain the lead-in clause, to which courts then applied *ejusdem generis* in order to limit the exclusion to losses caused by natural disasters. *See, e.g., Gullett v. St. Paul & Marine Ins. Co.*, 446 F.2d 1100 (7th Cir.1971); *Peach State Uniform*

Serv., Inc. v. American Ins. Co., 507 F.2d 996 (5th Cir.1975); *Wisconsin Builders, Inc. v. General Ins. Co. of America*, 65 Wis.2d 91, 221 N.W.2d 832 (1974).

8. According to *Black's Law Dictionary* (6th ed.1990), the term is defined as follows:

> Of the same kind, class, or nature.... [W]here general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned.... The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically mentioned. *Nor does it apply when the context manifests a contrary intention.*
> (Emphasis added.)

Bongens' policy. The new language, added to the end of the lead-in clause, reads:

> d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.

This is the language which only this court and the *Cox* court have examined.

In *Cox*, a house was damaged by vibrations from explosions in the vicinity of the Cox's property. *Cox*, 459 S.E.2d at 447. Explosions were a covered peril, but earth movement was not. *Id.* The earth movement exclusion contained the precise language contained in the Bongens' policy. Despite the lead-in clause, the court ruled that *ejusdem generis* applied, and that the exclusion was limited to losses caused by natural disasters. *Cox* does not address the first three sections of the lead-in clause, but only interprets the "natural or external forces" language of the addition to the lead-in clause. The court in *Cox* found that the word "external" is not defined in the policy, that "external" by its literal definition means "apart, beyond, exterior or connected to the outside," and that this definition did not encompass man-made earth movements. *Id.* at 447–48.

We decline to follow *Cox* for two reasons. First, *Cox* ignores the other sections of the lead-in clause, one of which states that coverage is excluded "regardless of: a) the cause of the excluded event...." Clearly, this language encompasses earth movement caused by either nature or humans. Second, *Cox*'s definition of "external" is incomplete. It is true that, standing alone, the word "external" does not refer to anything man-made. However, the word must be read in context ("We do not insure for such loss regardless of ... whether the event ... arises from natural or external forces...."). It is apparent that, when read in context, "external" means "external from natural forces," which could only mean man-made forces.

**D. Application of the Earth Movement Exclusion Does Not Defeat the Reasonable Expectations of the Parties.**

 The Bongens argue that application of the earth movement exclusion would defeat their reasonable expectations of coverage. We construe insurance contracts "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms." *Serradell v. Hartford Acc. & Indem. Co.*, 843 P.2d 639, 641 (Alaska 1992). However, since most insureds develop an expectation that every loss will be covered, the reasonable expectation doctrine "must be limited by something more than the fervent hope usually engendered by loss." *Millar*, 804 P.2d at 826–27 ("If ... all that was required to defeat the operation of a policy exclusion under the reasonable expectation doctrine was a provision attempting to qualify or limit the scope of policy coverage, then every policy exclusion would be invalid as contrary to the insured's reasonable expectation of coverage."). In order to determine the reasonable expectations of the parties, we look to 1) the language of the disputed policy provisions; 2) the language of other policy provisions; 3) relevant extrinsic evidence; and 4) case law interpreting similar provisions. *Bering Strait*, 873 P.2d at 1295.

 Given these four sources of guidance in interpreting the reasonable expectations of the insureds, we conclude that the Bongens could not have reasonably expected coverage for loss resulting from earth movement. The lead-in clause and the earth movement exclusion clearly exclude coverage for any loss in which earth movement was a concurrent cause. The Bongens have not pointed to any other provision in the policy which contradicts the exclusion. There is no relevant extrinsic evidence indicating that the Bongens, prior to the loss, expected coverage for a loss caused in part by earth movement.[9]

Finally, the only precedent from other jurisdictions which would find coverage in spite of the exclusionary language is from California and Washington. As explained above,

---

9. Indeed, it appears as if their expectation was that such a loss would not be covered. *See*

footnote 2, *supra*.

the California rule is derived from statute, *see Howell,* 267 Cal.Rptr. at 712, and Alaska has no equivalent statute. The Washington cases apply the California rule without significant further analysis. *See, e.g., Villella,* 725 P.2d at 962–64. The great majority of courts considering the issue have held that the earth movement exclusion is enforceable. *See* Discussion at § B, *supra.*

For all of these reasons, we conclude that it would not be reasonable for the Bongens to have expected that the efficient proximate cause rule would apply in Alaska, and that their loss would be covered despite the earth movement exclusion.

IV. *CONCLUSION*

We REVERSE the superior court, and direct it to enter partial summary judgment in State Farm's favor.

MOORE, J., not participating.

MATTHEWS, Justice, dissenting.

I agree with the decision of the superior court and thus would remand this case for a jury determination of the efficient proximate cause of the loss of the Bongens' house.

The Bongens' claim is that land clearing and blasting by Kodiak Electric Association caused the mudslide which destroyed their house. As there is record support for this claim it should be accepted as true for purposes of evaluating State Farm's motion for partial summary judgment. *Sun v. State,* 830 P.2d 772, 776 n. 7 (Alaska 1992).

The Bongens' policy covered all risks, except those set forth in the policy exclusions. The policy excluded losses caused by certain perils, one of which was earth movement.[1] Concerning excluded perils, the policy provided:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of a combination of these....

The question in this case is whether there is coverage in circumstances where there are covered and excluded perils in the chain of causation leading to a loss. In order to answer questions such as this courts have developed the efficient proximate cause doctrine. Under this doctrine if the efficient, or dominant, cause of a loss is an insured peril, coverage exists even though an excluded peril also contributes to the loss. This is widely accepted. Appleman's Treatise on Insurance Law states the doctrine as follows:

> Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominant cause which sets into motion the chain of events producing the loss. An incidental peril outside the policy, contributing to the risk insured against, will not defeat recovery, nor may the insurer defend by showing that an earlier cause brought the loss within a peril insured against, where the insured peril was the last step prior to loss. In other words, it has been held that recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.

5 J. Appleman, *Insurance Law and Practice* § 3083 at 309–311 (1970) (footnotes omitted).

1. Among other excluded perils were "**Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building," "**Water Damage,**" and "**Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered."

Today's majority opinion does not specifically disagree with the efficient proximate cause doctrine, noting merely that this court has never adopted it. Op. at 1043, n. 1. While this is true, we indicated our agreement with a case which employed the doctrine in *Bering Strait School District v. RLI Insurance Co.*, 873 P.2d 1292, 1297 (Alaska 1994). In *Bering Strait* a school was destroyed by fire. The issue was whether certain rebuilding costs mandated by building code changes were excluded by a policy clause excluding the insurer's responsibility for losses occasioned "directly or indirectly" by enforcement of any ordinance or law. We accepted the insured's argument that the ordinance or law exclusion did not apply "where a covered event such as a fire triggers enforcement." *Id.* at 1296. In accepting this extra-literal argument we cited with approval a number of cases, including *Starczewski v. Unigard Insurance Group*, 61 Wash.App. 267, 810 P.2d 58 (1991). We said the following about that case:

> In [*Starczewski*] the clause construed excluded coverage for losses "resulting directly or indirectly from . . . any ordinance or law regulating the use, construction, repair, or demolition of property." The court suggested that this exclusion was inconsistent with the insurance company's promise to "repair or replace the damaged property" *and further observed that it "would also be rendered ineffective by the 'efficient proximate cause' rule, since any additional repair costs due to code requirements resulted predominately from the fire, not from the enforcement of any ordinance or law."*

*Bering Strait*, 873 P.2d at 1297 (emphasis added) (citations omitted).

Given the holding in *Bering Strait* and our quotation of the language emphasized above, it seems correct to conclude that we have impliedly accepted the efficient proximate cause doctrine. Moreover, as noted, the efficient proximate cause doctrine is widely accepted among American jurisdictions. There is no reason not to accept it in Alaska.

The issue, however, in this case, is not whether the efficient proximate cause doctrine is applicable in Alaska. It is whether, given the application of the doctrine and given that a covered peril is the efficient proximate cause of a loss, policy language can negate coverage where an excluded secondary peril also is present in the chain of causation. On this issue the courts are divided. As the majority opinion indicates, decisions in California and Washington deny effect to such an exclusion, whereas authorities in a numerically greater number of jurisdictions give effect to such exclusions.[2] I favor the California and Washington approach because it is consistent with the reasonable expectations of the insured.[3]

The earliest example of the approach taken by the Washington courts is *Graham v. Public Employees Mutual Insurance Co.*, 98 Wash.2d 533, 656 P.2d 1077, 1081 (1983). The policies involved in *Graham* covered explosions as a peril under certain circumstances but excluded losses resulting "directly or indirectly" from earth movement, including mudflows. *Id.*, 656 P.2d at 1079. The loss in *Graham* resulted from the eruption of Mt. St. Helens. The eruption triggered flooding and mudflows which destroyed houses many miles from the volcano. The court held that it was a jury question whether the eruption was a covered explosion. *Id.* The fact that the eruption triggered mudflows would not negate coverage if the jury were to find that the eruption was the efficient or predominant cause of the destruction of the houses and the mudflows were merely "manifestations of the eruption":

> It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events. *Dickson, supra*, 77 Wash.2d at 794, 466 P.2d 515, 5 J. Appleman, *supra*, at 309–11; *Frontis v.*

---

2. Most jurisdictions, however, have no ruling on this point. *See* Lawrence Alan Waus, Comment, 67 Wash. L.Rev. 215, 222 (1992).

3. I note that the case featured in today's opinion, *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272 (Utah 1993), rejects the reasonable expectations doctrine.

*Milwaukee Ins. Co.*, 156 Conn. 492, 242 A.2d 749, 753 (1968); 43 Am.Jur.2d, *supra*, at § 1182....

The determination of proximate cause is well established in this state. As a general rule, the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court.

In the present case, the mudflows which destroyed the appellants' homes would not have occurred without the eruption of Mt. St. Helens. The eruption displaced water from Spirit Lake, and set into motion the melting of the snow and ice flanking the mountain. A jury could reasonably determine the water displacement, melting snow and ice and mudflows were mere manifestations of the eruption, finding that the eruption of Mt. St. Helens was the proximate cause of the damage to appellants' homes. This issue is not a question of law but a question of fact, to be determined by the trier of facts.

*Id.* at 1081 (certain citations omitted). *Graham* was followed by the Supreme Court of Washington in *Villella v. Public Employees Mutual Insurance Co.*, 106 Wash.2d 806, 725 P.2d 957, 962 (1986) ("where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery"), and *Safeco Insurance Co. v. Hirschmann*, 112 Wash.2d 621, 773 P.2d 413, 416 (1989) ("*Graham* ... suggests that whenever the term 'cause' appears in an exclusionary clause it must be read as 'efficient proximate cause.' ").

The leading case in California is *Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963). In *Sabella* a house built on uncompacted fill was damaged by settling triggered by leakage from a negligently constructed sewer line. The homeowner's policy provided all risk coverage but excluded "loss ... by ... settling...." *Id.*, 27 Cal.Rptr. at 691–92, 377 P.2d at 891–92. The California Supreme Court held that the efficient proximate cause of the loss was the broken sewer line and thus there was policy coverage even

though the policy indicated "an intent to exclude any and all loss caused by settling, and settling did occur herein." *Id.*, 27 Cal. Rptr. at 695, 377 P.2d at 895. In reaching this conclusion the California Supreme Court relied on common law authorities propounding the efficient cause doctrine. The court stated:

Plaintiff Sabellas alternatively and correctly argue, however, that defendant National Union is liable because the rupture of the sewer line attributable to the negligence of a third party, rather than settling, was the efficient proximate cause of the loss. The policy excepted *loss by settling,* and the findings of the court below indicate that the broken sewer line emptied waste water into the loose fill, setting in motion the forces tending toward settlement. As stated in 6 Couch, *Insurance* (1930), § 1466, "[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster." The virtual absence of subsidence damage in the prior four years of the existence of the house here in question clearly indicates that the broken pipe was the predominating or moving efficient cause of the loss. (*See* 6 Couch, *Insurance* (1930), § 1463, p. 5298.)

*Id.* Following this language the court went on to note similar principles expressed both in earlier California cases and cases decided in other jurisdictions:

The instant problem in proximate causation is similar in principle to that in *Brooks v. Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 163 P.2d 689, wherein recovery was allowed on a policy insuring against death by accidental means where the insured, while suffering from incurable cancer, an excluded peril, died in a fire. It was there stated: "[R]ecovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or

if it is the prime or moving cause." (27 Cal.2d at 309–310, 163 P.2d at 691.) Similarly, in *Hanna v. Interstate Business Men's Accident Ass'n*, 41 Cal.App. 308, 182 P. 771, recovery was allowed on a policy covering death from external or violent means, but limiting recovery for hernia injuries, where a blow on the chest caused a hernia resulting in death. The court held that under the established rules governing proximate causation as applied to insurance cases, "the hernia must be regarded as the result of the accident, and the accident itself, and not the resultant hernia, as the cause of the death." (41 Cal.App. at 310, 182 P. at 772; *see* Note 108 A.L.R. 6.) Also relevant is *Norwich Union Fire Ins. Soc. v. Board of Commissioners* (5 Cir., 1944), 141 F.2d 600, where corn in storage was insured against loss by fire but not against loss by deterioration. A fire destroyed the machinery necessary to air the corn and so prevent its deterioration, and the corn decayed from inherent natural causes. It was held that the fire was the proximate cause of the loss of the corn, even though the excepted peril of deterioration immediately caused the loss. (141 F.2d at 602; *see Edgerton & Sons, Inc. v. Minneapolis Fire & Marine Ins. Co.* (1955), 142 Conn. 669, 673–674, 116 A.2d 514 [policy covers though excluded peril immediately brings about damage, where the operation of the excluded peril is caused by a peril insured against]; *Princess Garment Co. v. Fireman's Fund Ins. Co.* (6 Cir., 1940), 115 F.2d 380, 383 [recovery allowed where peril insured against causes the action of an excepted peril resulting in loss].)

*Id.* at 696, 377 P.2d at 896 (bracketed text in original).

Only after the *Sabella* court had concluded that "the broken pipe was the predominant or moving efficient cause of the loss," *id.* at 695, 377 P.2d at 895, was any mention made of California statutory provisions. This was in the context of an attempt by the insurer to exonerate itself from liability not, importantly, as a basis for establishing liability, for liability at this point in the opinion had been determined on the basis of common law authority. I set forth in the margin the *Sabella* court's discussion of the insurer's statutory argument.[4] Thus while it is true that California does have unique statutory provisions, it is not accurate to contend that the decision to impose liability on the insurance company in *Sabella* was based on those provisions rather than the general common law.

The *Sabella* rule has been followed in numerous California cases.[5] It has been reaf-

---

4. Defendant insurer attempts to establish its nonliability by reliance upon section 532 of the Insurance Code, which states that "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." The insurer's argument is that since in a factual sense the loss herein would not have occurred "but for" the settling of the underlying earth and house, the plaintiffs are thereby exempt from coverage for this loss. But section 532 must be read in conjunction with related section 530 of the Insurance Code (*Pacific etc. Co. v. Williamsburgh, supra,* 158 Cal. 367, 372, 111 P. 4), and section 530 provides that "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." It is thus apparent that if section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred "but for" the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately results in the loss. (*See* 6 Couch, *Insurance* (1930), § 1464.)

It would appear therefore that the specially excepted peril alluded to in section 532 as that "but for" which the loss would not have occurred, is the peril proximately causing the loss (*see Herron v. Smith Bros., Inc.,* 116 Cal. App. 518, 521[1], 2 P.2d 1012), and the peril there referred to as the "immediate cause of the loss" is that which is immediate in time to the occurrence of the damage.

*Sabella,* 27 Cal.Rptr. 689, 377 P.2d at 896–97 (certain citations omitted).

5. *See, e.g., Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989); *Howell v. State Farm Fire & Casualty Co.,* 218 Cal.App.3d 1446, 267 Cal.Rptr. 708

firmed by the Supreme Court of California as reaching a result which is consistent with "the reasonable expectations of both the insured and insurer whenever there exists a causal or dependent relationship between covered and excluded perils." *Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 296, 770 P.2d 704, 708 (1989).[6]

I agree that the efficient proximate cause rule comports with the reasonable expectations of the insured. If an insured buys a policy seeking protection from a given peril, the insurer issuing the policy should not be able to avoid coverage because an excluded peril is also present in the chain of causation if the covered peril is the dominant cause of the loss. Numerous examples come to mind. A homeowner who acts negligently in the face of an approaching forest fire should not lose coverage because his negligence was a minor contributing factor to the loss of his house.[7] A school district which, following a fire loss, must rebuild a school which is different from that which was destroyed because of the enforcement of an ordinance regulating construction should be covered under a replacement value fire policy.[8] And a homeowner who is protected from damage by construction equipment should not lose coverage because a runaway bulldozer initiates an avalanche which damages his house, rather than directly running into it.[9] The rule of efficient proximate cause was devised to prevent such counter-intuitive results.

(1990); *Gillis v. Sun Insurance Office Ltd.,* 238 Cal.App.2d 408, 47 Cal.Rptr. 868 (1965); *Sauer v. General Insurance Co.,* 225 Cal.App.2d 275, 37 Cal.Rptr. 303 (1964).

**6.** The *Garvey* court explained the *Gillis* and *Sauer* cases noted above as follows:
> Indeed, for 10 years following *Sabella* the Court of Appeal applied the efficient proximate cause analysis in resolving multiple-cause property-coverage questions under all-risk homeowner's property policies. (*See, e.g., Gillis* ... [coverage afforded under policy insuring loss by windstorm but excluding loss from water damage; wind, causing gangway to fall on and sink a dock, was deemed efficient proximate cause of loss]; *Sauer* ... [coverage afforded when water leaking from plumbing system (covered peril) was the efficient proximate cause of subsidence damage (excluded peril)].)
> *Garvey,* 257 Cal.Rptr. 292, 770 P.2d at 708–09 (bracketed text in original).

In sum, I agree with the Washington and California authorities which hold that when an insurer issues a policy protecting against a peril, it cannot avoid coverage where the peril is the dominant cause of the loss merely because an excluded peril is also in the chain of causation operating on a secondary basis. The purpose of insurance is to insure and it is reasonable to expect coverage when an insured peril has, acting as a dominant force, brought about a loss.

In accordance with the foregoing I would remand this case for a determination by the trier of fact as to whether a covered peril was the efficient proximate cause of the loss of the Bongens' home.

**7.** To use an example having some currency in view of the disastrous 1996 Big Lake Fire.

**8.** To use an example taken from *Bering Strait, supra.*

**9.** To use an example similar to that used by the court in *Wyatt v. Northwestern Mutual Insurance Co.,* 304 F.Supp. 781, 783 (D.Minn.1969). The court noted that it was "difficult to distinguish between a situation where a piece of heavy equipment breaks loose and hits a house causing serious damage and a situation where that equipment instead hits only an embankment next to a house but causes the earth to move and thereby damages the house." The court observed: "Thus it would appear that a distinction should be drawn between an excluded event which is a cause and such an event which is the inevitable result of another event." *Id.*